988 A.2d 1180 (2010)
412 N.J. Super. 39
William J. PARISH, Jr., Plaintiff-Appellant,
v.
Hannah PARISH, Defendant-Respondent.
Docket No. A-1837-08T2
Superior Court of New Jersey, Appellate Division.
Argued October 20, 2009.
Decided February 3, 2010.
*1182 Eric S. Solotoff, Roseland, argued the cause for appellant (Fox Rothschild, LLP, attorneys; Mr. Solotoff, of counsel and on the brief; Robert A. Epstein, Florham Park, on the brief).
Respondent has not filed a brief.
Before Judges PARRILLO, LIHOTZ and ASHRAFI.
The opinion of the court was delivered by
LIHOTZ, J.A.D.
Plaintiff William J. Parish, Jr. appeals from portions of a November 21, 2008 post-judgment Family Part order. Plaintiff filed a motion to enforce litigant's rights (ELR) to compel defendant Hannah Parish to comply with court ordered parenting time. The judge did not review the merits of plaintiff's application, concluding the motion was moot. Despite that conclusion, the court directed the parties to present their disputes to the parenting coordinator designated in the Dual Final Judgment of Divorce (FJOD). Further, the judge conditioned the filing of any future motions, including enforcement of parenting time requests, on the requirement that the parties and their attorneys first conduct a four-way settlement conference to resolve the disputes and certify their efforts proved unsuccessful. Also, the court ordered plaintiff to pay $500 toward defendant's counsel fees and costs.
On appeal, plaintiff argues the motion judge erred when she: (1) imposed preconditions to filing future motions, including enforcement applications; (2) dismissed the parenting time issues as moot and improperly deferred resolution to the parenting coordinator; (3) failed to make findings of fact and conclusions of law as to why the remaining aspects of plaintiff's motion were denied; and (4) denied plaintiff's request for counsel fees and awarded counsel fees to defendant. Plaintiff argues the identified provisions of the order must be reversed, and the matter reassigned on remand.
Following our review of the arguments presented on appeal, in light of the record and the applicable law, we conclude the motion judge erred in mandating a restriction on the parties' exercise of the right to *1183 file motions in the absence of a specific finding of the need to control frivolous or vexatious litigation and by not substantively addressing plaintiff's motion, as the issues presented were not moot and ripe for disposition. Finally, because the counsel fee award was based on a determination that we now reverse, it, too, must be reversed. Accordingly, we reverse paragraphs 3, 6, 7 and 8 of the November 21, 2008 order.

I.
We set forth a brief history of the prior litigation and the facts leading up to plaintiff's ELR motion. The parties married on July 3, 1998. Plaintiff and defendant have three children. The parties separated in April 2007 when defendant filed a complaint for a temporary restraining order (TRO), and she and the three children vacated the former marital home. On June 20, 2007, plaintiff filed a complaint for divorce. Thirteen months later, on July 24, 2008, the parties appeared before a different Family Part judge and entered the FJOD, which incorporated the parties' Marital Settlement Agreement (MSA) resolving property distribution, alimony, child custody and support.
Certain provisions of the MSA are relevant to the matter under review. First, although no final restraining orders were filed, each of the parties had obtained a TRO against the other, pursuant to the New Jersey Prevention of Domestic Violence Act (Act), N.J.S.A. 2C:25-17 to -35. Therefore, paragraph 9.6(A) of the MSA governed communication between plaintiff and defendant as follows:
The parties are prohibited from having any oral, personal or other form of contact or communication with the other except that they may communicate with each other specifically regarding the children's well being and parenting issues. Any such communication between Husband and Wife with regard [to] the children shall take place via email, with a 24 hour response rule, except in the event of an emergency, and any and all such communications shall be non-harassing. The amount of emails during a 24 hour period should be reasonable. The acceptable communications set forth above shall not include communications regarding finances, even if the finances relate to the children.
Second, detailed parenting time provisions were contained in various paragraphs of Article 3. In paragraph 3.1, the parties agreed to share joint legal custody of the children with defendant designated the parent of primary residence and plaintiff designated the parent of alternate residence. Paragraph 3.4 contained the parties' agreement to "continue with the current parent coordinator," Dr. Amie Wolf-Mehlman, who had been appointed "to assist the parties in resolving disputes as to custody, parenting time or any related issues affecting the parties' children," by the February 7, 2008 pendente lite order.
Third, the parties agreed, in paragraph 3.5, to review the procedures for telephonic communication between the parties and the children with the parenting coordinator. Pending that review, the provisions of an October 1, 2007 consent order were to be followed.
Less than one month after entry of the FJOD, plaintiff filed a domestic violence complaint wherein he alleged defendant called and threatened to kill him. The court entered a TRO, which incorporated the parenting time provisions in the FJOD. Thereafter, defendant denied plaintiff telephone contact with the children, claiming that any telephone calls could be a violation of the TRO. Counsels' efforts to clarify this issue were unsuccessful.
As a consequence, plaintiff filed his first and only post-judgment motion to enforce the terms of the FJOD. Plaintiff sought *1184 relief, which included allowing him to engage in telephonic communication with the children, fixing parenting time from September 2008 through June 2009, providing a copy of a doctor's report issued following an evaluation of the parties' child, allegedly conducted in violation of the joint custody order, and awarding counsel fees and costs. Defendant responded and filed a cross-motion to deny plaintiff's motion entirely, refer the parenting issues to the parenting coordinator, require plaintiff to pay sanctions for misrepresenting the circumstances regarding their child's evaluation, release her personalty, and award counsel fees.
Prior to the motion's return date, plaintiff's domestic violence complaint was dismissed, and the temporary restraints were dissolved. The parties met with the parenting coordinator, each submitting his or her perspective on the various issues for review and resolution. Prior to oral argument on the motion and cross-motion, the parties received the parenting coordinator's recommendations.
On November 21, 2008, the court entered the order discussed above and this appeal ensued. The motion judge submitted a supplemental statement of reasons, pursuant to Rule 2:5-1(b), expanding her findings and conclusions.
For context, these are the provisions of the order challenged by plaintiff on appeal:
3. The issues regarding the parenting time plan are MOOT by virtue of the fact that the litigation seeking a[TRO] was dismissed.
. . . .
6. Prior to filing any future motions in this matter, the parties shall engage in a timely four-way conference with counsel, in an attempt to resolve the issues at hand. The party filing the motion must certify that a four-way conference occurred and that the parties were unsuccessful resolving the issues. Failure to engage in a four-way conference will result in an automatic dismissal of the motion.
7. On or before December 31, 2008, plaintiff shall pay $500 towards defendant's attorney's fees associated with this motion, payable through counsel.
8. In all other respects, plaintiff's motion and defendant's cross[-]motion are DENIED.

II.
The standards governing our review are well-settled. "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12, 713 A.2d 390 (1998) (citing Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974)). Consequently, we "should not disturb the factual findings and legal conclusions of the trial judge unless ... convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice" or when we determine the court has palpably abused its discretion. Cesare, supra, 154 N.J. at 412, 713 A.2d 390 (internal quotations omitted).
We are not bound by "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Manalapan Tp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995). However, recognizing the special expertise of judges hearing matters in the Family Part, we accept the trial judge's conclusion when evidentially supported. Cesare, supra, 154 N.J. at 412, 713 A.2d 390. We reverse only to "ensure that there is not a denial of justice" because the family court's "conclusions are [] 'clearly mistaken' or `wide of the mark.'" *1185 New Jersey Div. of Youth and Fam. Servs. v. E.P., 196 N.J. 88, 104, 952 A.2d 436 (2008).

III.

A.
Plaintiff argues the motion judge misapplied her discretion by denying review of his enforcement motion and by imposing preconditions to filing future motions. He maintains since the judge specifically found his application neither frivolous nor harassing, the imposition of restraints violated due process protections.
Plaintiff correctly states the Due Process Clause of the Fourteenth Amendment guarantees citizens access to courts to present claims of wrongdoing. U.S. Const. amend. XIV, § 1; Wolff v. McDonnell, 418 U.S. 539, 578-79, 94 S.Ct. 2963, 2985-86, 41 L.Ed.2d 935, 963-64 (1974). This court concluded that "the complete denial of the filing of a claim without judicial review of its merits would violate the constitutional right to access of the courts." Rosenblum v. Borough of Closter, 333 N.J.Super. 385, 390, 755 A.2d 1184 (App.Div.2000) (citing U.S. Const. amend. XIV, § 1). Yet, courts have the inherent authority, if not the obligation, to control the filing of frivolous motions and to curtail "harassing and vexatious litigation." Id. at 387, 388, 391, 755 A.2d 1184; see also N.J.S.A. 2A:15-59.1(b)(1) (providing a judge may find a frivolous complaint, counterclaim, cross-claim or defense when said pleading is "commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury"); R. 1:4-8(a)(1) (stating the signature of a party or counsel on a pleading certifies the document is not presented for an "improper purpose, such as to harass or to cause unnecessary delay").
In Rosenblum, supra, we examined whether a pro se litigant could be enjoined from filing successive complaints after the court had previously concluded the claimed relief was frivolous. 333 N.J.Super. at 387, 755 A.2d 1184. We held that in certain circumstances, due process is not impaired by enjoining litigation. Id. at 391, 755 A.2d 1184. "[W]here a pattern of frivolous litigation can be demonstrated, the Assignment Judge can prevent the complaint from being filed[,]" when other available sanctions, such as monetary penalties, proved unsuccessful as a deterrent. Id. at 391-92, 755 A.2d 1184.
The restraint here barred plaintiff from seeking enforcement of the recently entered judgment unless he first affirmatively attempted resolution of the dispute. Although this is a more limited restraint than the one reviewed in Rosenblum, it, nevertheless, burdened the parties' access to judicial consideration of post-judgment enforcement or modification motions and requires review of its due process implications.
The issue of whether a court may restrict post-judgment motion filings in family matters has been the subject of limited review. In D'Amore v. D'Amore, 186 N.J.Super. 525, 453 A.2d 251 (App.Div.1982), we reversed a post-judgment order that prohibited the plaintiff "from filing any further harassing motions against defendant in the future" because it was "too broad and too ambiguous." Id. at 529, 531, 453 A.2d 251. Recognizing the court's power to enjoin prospective harassing litigation, we cautioned that any exercise of the power must not impinge on "the fundamental right of the public to access [] the courts in order to secure adjudication of claims on their merits." Id. at 530, 453 A.2d 251.
Before any prior restraint on access can be considered, the use of litigation *1186 to harass must be first "objectively determinable." Ibid. Thereafter, any restraint imposed must apply to the "specifically identified claims[,] which ... have been determined to fall within one of the recognized categories of objective harassment[,]" making "[a] nonspecific and nondiscrete injunction against prospective litigation... patently [u]nsustainable." Ibid.
A particularly egregious example of harassing post-judgment family litigation is found in Kozak v. Kozak, 280 N.J.Super. 272, 274, 655 A.2d 95 (Ch.Div.1994), certif. denied, 151 N.J. 73, 697 A.2d 546 (1997), where the plaintiff filed numerous motions requesting the judge's recusal and submission to a psychiatric evaluation and, secondarily, questioning the defendant's fitness as the custodial parent. The Family Part Presiding Judge read every motion filed by the plaintiff and found the request for recusal repetitive, as the same relief had been sought and denied on two prior occasions. Additionally, the court determined the requests were unsupported by "any recent or relevant allegations." Id. at 275, 655 A.2d 95. Finding the plaintiff's motions "repetitive, frivolous and unsubstantiated[,]" the judge concluded the motions were designed to control and intimidate the defendant, wear her down financially, and pressure the court to reach a desired result. Id. at 276, 655 A.2d 95.
Here, the motion judge did not impose an outright bar to seek relief but prohibited future filings, regardless of the issues raised, unless demonstrated out-of-court attempts to resolve the disputes proved unsuccessful. Specifically, new motions on any issue, including the enforcement of litigant's rights for continuing violations of the court's orders, would not be considered by the court unless the parties first "engage[d] in a timely four-way conference with counsel, in an attempt to resolve the issues at hand[,]" and the moving party certified "a four-way conference occurred and that the parties were unsuccessful [in] resolving the issues." As noted, the failure to engage in this four-way discourse was "automatic" grounds to dismiss the motion.
These restrictions were imposed without limitation, despite the motion judge's complete rejection of defendant's contention that "plaintiff is determined to engage in scorched-earth post-judgment litigation tactics," and her express acknowledgment "that [n]either party [w]as engaging in frivolous and harassing litigation[.]" Instead, the exclusive rationale justifying the restraint was an unexplained observation that the divorce proceedings had been "extremely contentious," the discovery process "arduous," and the parties "did not communicate effectively on the issues." From this alone, the court suggested "the danger" of possible frivolous litigation was "certainly present" and imposed the restraint.
Recognizing the importance of effectively resolving parenting time disputes, the judge stated:
"Judicial time and energies are scarce societal resources, especially in family courts." Kozak v. Kozak, 280 N.J.Super. 272, 278, 655 A.2d 95 (Ch.Div.1994). For that reason, courts must attempt to balance the right of access to the courts against the need to avoid the misuse of judicial process. Moreover, although parenting time and/or custody issues often do not raise issues justifying emergent and immediate relief, they are important issues in any family. Given the volume of motions[,] particularly in the [F]amily [P]art, these issues may not be reached for at least thirty days. Every effort, however, should be made to encourage the parties to engage in good faith efforts to resolve the issues before presenting the issues to the courts.
. . . .

*1187 Given the history of this matter, this [c]ourt finds that the parties are quick to seek judicial intervention without making good faith efforts to resolve the issues before filing motions.... The parties are not precluded or enjoined from filing motions; they are entitled to access to the courts. That access, however, can be and should be conditioned on undertaking reasonable and good faith efforts to resolve the issues amicably before filing a motion. See Rule 1:6-2(c) (recognizing that prior to filing discovery or calendar motions, parties must engage in good faith efforts to resolve the issues.)
For the reasons discussed below, we reject the motion judge's conclusion that the restraint imposed was warranted based upon her generalized observations of the parties' possible animus. We are persuaded that, in the absence of any finding of a need to control baseless litigation, the balance struck by the motion judge in favor of restricting access to the court was an abuse of discretion.
Contrary to the court's finding that "the parties [were] quick to seek judicial intervention without making good faith efforts to resolve the issues before filing motions[,]" this record reveals no demonstrable "misuse of judicial process." Unlike the matrimonial litigants in D'Amore or Kozak, here, neither party was excessively litigious or engaged in frivolous or harassing litigation. At times, any matrimonial matter may become emotionally charged and acrimonious, making a collaborative approach to resolving disputes difficult. However, no evidence suggests plaintiff was overly zealous in filing pre-or post-judgment motions.
Prior to entry of the FJOD, plaintiff had filed a cross-motion to set parenting time in response to defendant's motion for pendente lite support, a subsequent order to show cause to enforce the ordered parenting time, and a motion for reconsideration of the denial of his request to enforce parenting time. We emphasize that these parties settled all collateral issues resulting in the entry of final judgment within thirteen months of the complaint's filing. Post-judgment, plaintiff only filed the current motion to enforce litigant's rights.
In light of the comparatively limited scope of this litigation, which utilized proper measures to engage the court's intervention, we find no support for restraining future efforts to secure enforcement relief. The motion judge's salutary gesture of supporting settlement discussions, likely designed to impose objectivity upon the parties and require them to act as parents rather than litigants, cannot justify the preclusion of motions directed to the enforcement of parenting time orders. Also, one cannot ignore the fact that by the time the motion judge heard oral argument, the parties had attempted resolution by consulting the parenting coordinator and their attorneys. Both plaintiff and defendant awaited a determination by the court because these settlement efforts were unsuccessful. The court's obligation to the litigants was to rule on the motion requests, not defer their disposition.
Additionally, we take issue with the motion judge's suggestion that "parenting time and/or custody issues often do not raise issues justifying emergent and immediate relief" and that deferral of these matters to a parenting coordinator is defensible to conserve "[j]udicial time and energ[y]" (emphasis added). More than financial contests, custody and parenting time disputes trigger the need for a family judge, acting as parens patriae, to prevent harm and protect the best interests of children. Fawzy v. Fawzy, 199 N.J. 456, 474-75, 973 A.2d 347 (2009). In fact, interference with custody and parenting time may immediately and irreparably impact *1188 the best interests of a child and often represent classic cases necessitating court review.
The very nature of the relief sought here-enforcement of the parenting time provisions of the FJOD-does not lend itself to deferral to a parenting coordinator. Enforcement of orders rests with the courts and falls outside the sphere of the parenting coordinator's authority to aid in the implementation of a parenting time plan. See Notice to the Bar: Parenting Coordinator Pilot Program, § II. C., 188 N.J.L.J. 169 (April 9, 2007).
We recognize matrimonial matters are susceptible to multiple motion filings, each met by a cross-motion, centering on similar general themes of enforcement of custody or support orders. Further, we are mindful of the great expense of time, money, and emotion associated with family court motion practice and the constant demands for intervention placed upon our Family Part judges. However, even repetitive motions for enforcement, when premised upon a demonstration of a party's failure to comply with court orders, cannot be automatically deemed a burden on the judicial process and deferred to a parenting coordinator. Here, based only on a possibility that frivolous litigation might develop, the court limited future motion filings. This conclusion was error.
Obviously, the parties' inability to communicate led to strained interactions. Plaintiff claimed defendant interfered with his contact with the children and refused to settle his parenting time schedule.[1] Upon a finding that a party too quickly invokes court review of matters later determined trifling, the court should first employ deterrents such as the imposition of sanctions or an award of attorney's fees.
The business of the courts is to finalize disputes. Any discretionary exercise of the extreme remedy of enjoining or conditioning a litigant's ability to present his or her claim to the court must be used sparingly; it is not a remedy of first or even second resort. As demonstrated by Rosenblum, D'Amore and Kozak, parties have the right to court review of their contests. Restraints on litigation are not favored as an everyday means of controlling calendars. Moreover, a court should not impose barriers that postpone review and determination of a claimed violation of its previously entered order. Such delays tend to exacerbate rather than mitigate difficulties.
We also emphasize that judicial review of enforcement motions, no matter how time consuming, is essential to discerning which motions pose problems mandating immediate attention and which describe matters that are trivial. If a court finds a motion is based on unsubstantiated allegations; is frivolous, repetitive, or intended to harass the former spouse; is the result of abusive litigation tactics; or is designed to interfere with court operations, the judge has the power to craft appropriate sanctions to curb such manipulations. When the imposition of sanctions fails, injunctive relief may be warranted.
In those limited instances where appropriate, an injunction should be issued only after the judge (1) makes a finding that past pleadings were frivolous or designed for an abusive purpose; (2) fully scrutinizes the newly filed pleadings and determines them to be repetitive and within the scope of the proscribed vexatious matters; and (3) has unsuccessfully attempted to abate the abuse by employing sanctions such as those provided by Rule 1:10-3 or Rule 5:3-7. Additionally, any restraint entered must be circumscribed, *1189 not global, and narrowly focus on the issues shown to warrant restraint.
Based on our conclusion, we strongly disagree with our dissenting colleague that the delay occasioned by a pre-motion filing requirement is a "reasonable" case management option, which is not "overly burdensome[] and [] does not unfairly prejudice either party." Post at 68-69, 75-76, 988 A.2d at 1197, 1200-01. The position expressed by our dissenting colleague is untethered from the facts. Moreover, the facts at hand illustrate the flaw in the purpose ascribed to the restriction, that is, "to eliminate unjustifiable expense" by curtailing "hasty filings of motions in a contentious matrimonial case." Post at 70, 988 A.2d at 1198.
Here, even though both parties anticipated a ruling from the court to finalize their dispute, the judge declined to examine the substantive applications. Instead, she directed the parties to the parenting coordinator for a recommendationa step they had already completedand mandated that they conduct a four-way conference and certify to its unsuccessful conclusion before accessing judicial review, which will require a second motion filing. This procedure resolved nothing, caused the filings to double, and unreasonably compounded the expenses to the parties.
Additionally, the dissent's assumption that the trial court would not "dismiss valid emergent applications because of deviation from its order[,]" post at 67, 988 A.2d at 1196, can only be valid by adding unstated terms to the otherwise clear dictates imposed by the court, which include that: "[p]rior to filing any future motions in this matter the parties shall engage in a timely four-way conference with counsel" (emphasis added). The necessity of this distinctive treatment of emergent matters supports our conclusion that a trial court must review each filing to discern its necessary disposition, and must not impose a bar until the parties hold a four-way settlement conference.
Notwithstanding our colleague's comments to the contrary, post at 66-67, 988 A.2d at 1196, we would not dispute that, after its review, a court may properly require parties to attempt to narrow their differences. But such a result should only occur based upon the court's understanding of the nature of the issues presented and the relief sought. It must not be imposed on parties merely to avoid decision-making.
Our dissenting colleague suggests we are "pronouncing a new rule" and questions the authorities we have cited, contending the entry of an order conditioning motion filings poses no infringement on procedural due process. Post at 61-62, 68-69, 988 A.2d at 1192-93, 1197. Our colleague reaches this result by drawing an analogy to various state and federal court rules governing discovery enforcement motions or requiring mediation. Post at 66-67, 988 A.2d at 1195-96. We fail to see the parallels between pre-judgment discovery practice or mediation and post-judgment motions for the enforcement of litigant's rights.
The pre-filing requirements of Rule 1:6-2(c), mandating that parties attempt to resolve "pretrial discovery" and "calendar motions" is narrowly drawn. If the Supreme Court intended to extend these restrictions to cover motion practice universally, it would have done so. The Court purposely did not do so because such a limitation, without the need to reign in unnecessary filings, impermissibly restricts access to the courts. D'Amore, supra, 186 N.J.Super. at 530, 453 A.2d 251; see also Pressler, Current N.J. Court Rules, comment 1.2 on R. 5:5-4 (2010). As we stated in D'Amore, supra, "the injunctive power is required to be exercised sparingly and only in those situations in which the exclusive harassment purpose is *1190 not merely a matter of the suitor's subjective intent but is, rather, objectively determinable." 186 N.J.Super. at 530, 453 A.2d 251.
Likewise, the implementation of mediation programs by the Court occurred after great study and discussion, input from interested parties, and the success of pilot projects. The programs are conducted under judicial supervision, Rule 1:40-2, are specifically defined in scope and afford litigants two complementary hours with no additional obligation to continue if the alternative dispute resolution efforts are unsuccessful. R. 1:40-4. Most alternative dispute resolution tools are engaged prior to trial and entry of judgment. Once a court has ruled, enforcement of its judgment should follow.
We do not share our colleague's view that the unfounded, general imposition of pre-filing motion requirements in this matter falls within the reasoned exercise of "the discretion of a trial judge[] to manage the course of [this] litigation[.]" Post at 68, 988 A.2d at 1197. Nor do we believe our rejection of such methods will curtail our trial judges' innovation or, as strongly suggested by our colleague, act to erode procedures now established by our Rules. Post at 70-71, 988 A.2d at 1197-98. Much time and great care were spent to create uniformity in practice throughout the State. It is the Supreme Court which holds the singular responsibility to enact the procedural rules by which the courts operate. Prior to the Court's adoption of a rule governing family court motion practice, the rule would have been vetted by the Conference of Family Presiding Judges and the Supreme Court's Family Practice Committee to measure the impact of the proposed process on all stake holdersthe Judiciary, the bar and the litigants. Thus, the Rules, once adopted, reflect the Judiciary's commitment to steer clear of the mischief created by local practices, which share unfamiliar attorneys and litigants. Any suggestion for modification of the Rules, or to develop what might be believed to be a "better practice," should first be directed to the Supreme Court Family Practice Committee and the Conference of Family Division Presiding Judges for consideration and recommendation, and, ultimately, to the Supreme Court for consideration and possible adoption.
In conclusion, although the order under review does not impose an absolute bar to the parties eventually being heard, this extreme is not the only scenario implicating due process concerns. Here, the order inappropriately impinged on a litigant's access to be heard under circumstances warranting no less than judicial review. These parties were unnecessarily burdened with additional procedural hurdles to secure enforcement of the terms of a judgment. That result cannot be sustained as an "innovative ... [case] management technique." Post at 71, 988 A.2d at 1198.
We emphasize that enjoining the filing of motions should be considered only following a determination that the pleadings demonstrate the continuation of vexatious or harassing misuse of judicial process. "[A]n injunction should only be directed to one `whose history of repetitious and frivolous filings indicates a clear intent to abuse the courts' ... can require 'only that a litigant refrain from filing a repetitious claim or a claim that the [litigant] knows to be frivolous.'" Rosenblum, supra, 333 N.J.Super. at 394, 755 A.2d 1184 (quoting Abdul-Akbar v. Watson, 901 F.2d 329, 334 (3d Cir.1990)). That was not the case in this matter. Accordingly, paragraph 6 of the November 21, 2008 order must be reversed.

B.
This leads to the next challenge regarding the motion judge's failure to *1191 address the allegations in plaintiff's enforcement requests; namely, the court's conclusion that the application was moot and directing the parties' return to the parenting coordinator. Plaintiff argues the issues were properly before the court because the parenting coordinator undertook a review and provided recommendations that defendant did not accept, and because the parenting coordinator cannot address the enforcement of orders. By declaring the matter moot and directing the re-engagement of the parenting coordinator, the parties were caused unnecessary delay and the parenting time problems remained unresolved. The court should have resolved the parenting time dispute.
The current guidelines for the Supreme Court Parenting Coordinator Pilot Program provide for the use of a parenting coordinator "to aid parties in monitoring the existing parenting plan, reducing misunderstandings, clarifying priorities, exploring possibilities for compromise and developing methods of communication that promote collaboration in parenting." Notice to the Bar: Parenting Coordinator Pilot Program, 188 N.J.L.J. 169 (April 9, 2007). Section IV(2) of the Program Guidelines directs that "parties will be given the opportunity to be heard on every issue submitted to the Parenting Coordinator." Ibid. Additionally, Section IV(5) states: "when either party does not accept or objects to a recommendation by the Parenting Coordinator, that party may apply to the court, in accordance with the Rules of Court, for a determination of the issue." Ibid.
In this matter, the July 2008 FJOD provided for shared scheduled parenting time, a temporary telephone communication schedule, and the parties' agreement that the issues would be formally reviewed by the parenting coordinator. The parenting coordinator's work was disrupted by the entry of the TRO, and the inability to resolve these difficulties culminated in the filing of the ELR motion. Following the TRO's dismissal, the parties contacted the parenting coordinator and reviewed the matters raised in plaintiff's motion and defendant's cross-motion. The parenting coordinator's recommendations were delivered prior to the motion's return date. Plaintiff was satisfied with the recommendations of the parenting coordinator and notified defendant of his position. Defendant's unwillingness to continue negotiations in favor of "waiting to see what comes of [the][c]ourt hearing," is clearly set forth in Dr. Wolf-Mehlman's correspondence. Plaintiff stated that position in his reply certification and again at oral argument. Defendant never accepted the parenting coordinator's recommendations.
Although it is possible that additional work with the parenting coordinator might have resulted in agreement on some points, the parties had clearly set forth their respective positions, the parenting coordinator had issued recommendations, and the parties, nevertheless, remained at odds. The motion judge's conclusion that the issues were "moot" ignored the fact that the parties had already consulted with and received recommendations from the parenting coordinator. It should not matter that the parties obtained her recommendations while they awaited calendaring of the motion.[2] When argument was heard, the issues were ripe for disposition and both parties anxiously awaited the court's determination.
*1192 We do not comment on the merits of the parties' claims regarding telephone time and adoption of a weekend parenting schedule, except to note court review of the alleged violations of prior orders is not obviated by the parties' agreement to utilize a parenting coordinator. See, e.g., P.T. v. M.S., 325 N.J.Super. 193, 216, 738 A.2d 385 (App.Div.1999) ("The court must not abdicate its decision-making role to an expert."). Accordingly, we reverse paragraphs 3 and 8 of the November 21, 2008 order.

C.
Plaintiff challenges the grant of defendant's request for an award of counsel fees and costs. Because the award was partially premised on a finding, which we have reversed, (that is, "the issues have been returned to the parent[ing] coordinator for an initial recommendation") the award must also be vacated. Any award of fees must await the review and disposition of the merits of the parties' assertions.

D.
We decline plaintiff's request to order the matter reassigned. We do not view the statements made by the court as evincing bias or the prior award of counsel fees as prejudicial to plaintiff. Moreover, we are confident in the ability of the Family Part judge to render a fair and impartial determination after review of the merits of the parties' respective motions.

IV.
In summary, we reverse paragraphs 3, 6, 7, and 8 of the post-judgment order dated November 21, 2008, and we remand the matter to the trial court for further proceedings consistent with this determination.
ASHRAFI, J.S.C. (temporarily assigned), concurring and dissenting.
I join in Section III, B through D, of the majority's opinion, agreeing that appellant's motion should not have been dismissed as moot. But I am compelled to dissent from Section III, A, which strikes down a condition the trial court imposed on the filing of future motions.
Paragraph 6 of the disputed order of November 21, 2008, provides:
Prior to filing any future motions in this matter, the parties shall engage in a timely four-way conference with counsel, in an attempt to resolve the issues at hand. The party filing the motion must certify that a four-way conference occurred and the parties were unsuccessful resolving the issues. Failure to engage in a four-way conference will result in an automatic dismissal of the motion.
I understand four-way conference to mean a discussion among the two parties and their lawyers by telephone or in person. I have found no constitutional principle or other legal authority that prohibits a trial court from imposing such a condition as an exercise of the discretionary authority our rules of procedure grant to courts to manage their cases. I cannot agree with the majority's holding pronouncing a new rule prohibiting such a condition on the filing of future motions.

I.
Appellant ex-husband argues that his constitutional rights are violated by the condition of a pre-filing four-way conference because it denies him access to the courts. The majority seems to agree, although it does not hold that appellant's constitutional rights were violated. The only legal authority the majority cites is grounded in the due process right of access to the courts. I disagree that the pre-filing condition denies litigants access *1193 to the courts or violates any constitutional rights.
The majority holds that before restrictions on motion practice may be imposed "[i]n those limited instances where appropriate," the trial court must first:
(1) make[] a finding that past pleadings were frivolous or designed for an abusive purpose; (2) fully scrutinize[] the newly filed pleadings and determine[] them to be repetitive and within the scope of the proscribed vexatious matters; and (3) ... unsuccessfully attempt[] to abate the abuse by employing sanctions such as those provided by Rule 1:10-3 or Rule 5:3-7. Additionally, any restraint entered must be circumscribed, not global, and narrowly focus on the issues shown to warrant restraint.
[Ante at 72-73, 988 A.2d at 1199.]
My colleagues do not cite legal authority in direct support of this holding, because none exists. They apparently derive their holding from Rosenblum v. Borough of Closter, 333 N.J.Super. 385, 387, 392, 396, 755 A.2d 1184 (App.Div.2000). Rosenblum, however, did not concern a procedural condition on the filing of motions. It held that the due process clause of the Fourteenth Amendment does not permit an absolute bar, without judicial review, on a litigant's right to file lawsuits. Id. at 389-90, 755 A.2d 1184. Not only does the order in this case have nothing to do with the filing of a complaint to initiate a lawsuit, it does not bar the filing of motions.
The majority relies on two other cases that considered the due process rights of litigants and their access to the courts. In D'Amore v. D'Amore, 186 N.J.Super. 525, 529-30, 453 A.2d 251 (App.Div.1982), a matrimonial case, we struck down a provision of a post-judgment order that enjoined the plaintiff "from filing any further harassing motions against defendant in the future." Recognizing the plaintiff's "fundamental right of ... access to the courts[,]" we concluded that the restraint was "too broad and too ambiguous." Id. at 530-31, 453 A.2d 251. In this case, the trial court's order is explicit and precise as to what is required before the filing of future motions. See ibid. It does not suffer from the breadth and ambiguity that doomed the order in D'Amore. Furthermore, it does not restrict the content of any motion. Our determination in D'Amore to safeguard litigants' access to the courts was prompted by concerns different from a reasonable procedural condition for future motions.
In Kozak v. Kozak, 280 N.J.Super. 272, 274, 276, 655 A.2d 95 (Ch.Div.1994), certif. denied, 151 N.J. 73, 697 A.2d 546 (1997), the presiding judge of the Family Part found justification to deny plaintiff access to the court in the form of oral argument because he had a history of arguing repetitive, frivolous, and unsubstantiated motions. Kozak did not address a procedural condition on the filing of motions. In this case, the court has not denied the ex-husband oral argument or a hearing on future motions. The court has imposed a condition that is routine in other contexts and does not bar the filing of whatever motions the litigants need to file.
In finding fault with the trial court's order, my colleagues overstate its effect and purpose. They state that the trial court's "salutary gesture of supporting settlement discussions ... cannot justify the preclusion of motions directed to the enforcement of parenting time orders." Ante at 52, 988 A.2d at 1187. Using words such as "restraint" and "injunction" several times, id. at 49-58, 988 A.2d at 1185-90, the majority ultimately describes the order as "enjoining the filing of motions," id. at 58, 988 A.2d at 1190. If the trial court's order precluded or enjoined the filing of motions, I would join the majority in reversing *1194 it. The order does not have that effect. The trial court correctly said that "[t]he parties are not precluded or enjoined from filing motions." Id. at 51, 988 A.2d at 1187.
My colleagues also overstate the purpose of the order. The trial court did not say its immediate purpose was to prevent frivolous, vexatious, or harassing litigation, as was the objective in the three cases that the majority relies upon. The order here was intended to prevent "misuse of the judicial process" because the parties were "quick to seek judicial intervention without making good faith efforts to resolve the issues."
The majority suggests that "misuse of the judicial process" only occurs when parties are "excessively litigious or engage[ ] in frivolous or harassing litigation." Ante at 52, 988 A.2d at 1187. I agree with the trial court that the judicial process is misused if parties can resolve disputes themselves without undue burden but make no attempt to do so and instead turn first to the courts. Before filing a formal application with the court, many lawyers would choose to confer with their adversary to determine whether a dispute can be resolved. The trial court's order only added the requirement that the parties themselves be included in one such conference. The order did not impose an unreasonable burden upon the parties. I do not agree with my colleagues that such a condition "impinge[s] on a litigant's access to be heard." Ante at 57, 988 A.2d at 1190.
We have long applied a court rule that requires good faith efforts to resolve discovery and scheduling disputes before a motion is accepted for adjudication. In relevant part, Rule 1:6-2(c) states:
Every motion in a civil case or a case in the Chancery Division, Family Part, ... involving any aspect of pretrial discovery or the calendar, shall be listed for disposition only if accompanied by a certification stating that the attorney for the moving party has either (1) personally conferred orally or has made a specifically described good faith attempt to confer orally with the attorney for the opposing party in order to resolve the issues raised by the motion by agreement or consent order and that such effort at resolution has been unsuccessful, or (2) advised the attorney for the opposing party by letter, after the default has occurred, that continued non-compliance with a discovery obligation will result in an appropriate motion being made without further attempt to resolve the matter.
See also Fed.R.Civ.P. 37(a)(1) ("motion [to compel disclosure or discovery] must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action").[1] Neither Rule 1:6-2(c) nor Fed.R.Civ.P. 37(a)(1) requires a showing of prior frivolous, abusive, repetitive, or vexatious motions before the procedural condition must be satisfied.
The majority distinguishes Rule 1:6-2(c) as "narrowly drawn" to pre-trial discovery and calendar motions, ante at 56, 988 A.2d at 1189, but does not discuss the relevance of the rule to the constitutional claim made by appellant. Without a proper supporting citation, the majority presumes that by limiting Rule 1:6-2(c) to discovery and calendar motions, the Supreme Court "purposely" intended to prohibit such a condition placed on any other type of motion. Ante at 56, 988 A.2d at 1189. The majority *1195 does not include a citation for its attribution of purpose and intent to the Supreme Court. Ibid. I do not think the majority's presumption is warranted, by the language of either Rule 1:6-2(c) or any other rule. My colleagues have cited no court rule that applies to the subject of our disagreement, and no rule of construction to support their presumption.[2]
With respect to the constitutional issue before us, no valid distinction has previously been noted between discovery and calendar motions and enforcement motions in the Family Part, or between pre-trial and post-judgment motions. Discovery and calendar motions, like some Family Part post-judgment motions, can be vital to a party's pursuit of its rights, claims, or defenses. See, e.g., Wilson v. Amerada Hess Corp., 168 N.J. 236, 252-54, 773 A.2d 1121 (2001); Pfenninger v. Hunterdon Cent. Reg'l High Sch., 167 N.J. 230, 236-37, 770 A.2d 1126 (2001); Payton v. N.J. Tpk. Auth., 148 N.J. 524, 538, 691 A.2d 321 (1997); Connolly v. Burger King Corp., 306 N.J.Super. 344, 348-49, 703 A.2d 941 (App.Div.1997). On the other hand, many post-judgment motions may be unnecessary if the parties and their attorneys first discuss the matter.
Also relevant to constitutional analysis, Rule 1:6-2(c) does not make a distinction based on the importance of the motion. The rule, and its application to all cases regardless of prior history of frivolous or abusive filings, support my conclusion that a procedural condition like the one imposed here does not deny access to the courts. In short, if the trial court in this case violated the litigants' due process rights, then so do our State and federal courts with respect to all discovery motions.
Besides Rule 1:6-2(c), several other court rules and practices require attempts to resolve disputes before presenting them to the court for adjudication. See R. 1:40-5 (mediation of custody and parenting time actions in the Family Part); R. 1:40-6(a) ("The court may, sua sponte and by written order, refer any civil, general equity, or probate action to mediation for an initial two hours...."); R. 1:40-7 ("Complementary Dispute Resolution Programs in the Special Civil Part"); R. 4:5B-3 ("The court may conduct a settlement conference or schedule any other settlement event in any civil action on its own or a party's request."); R. 4:21A (arbitration of certain civil cases); R. 5:5-5 ("Parties ... shall participate" in Early Settlement Program (ESP) in the Family Part); R. 5:5-6 ("Participation in Mandatory Post-MESP [Matrimonial Early Settlement Program] Mediation or in a Mandatory Post-MESP *1196 Complementary Dispute Resolution Event").
A specific court rule has never been needed to authorize trial courts to delay a trial on the scheduled trial date while attempting to resolve the case through settlement conference. In the Small Claims Section of the Special Civil Part, where pro se litigants may have little understanding of the processes employed in our courts, a specific rule authorizes judges' clerks and other trained volunteers to attempt settlement before the cases are called for trial. R. 1:40-7(a). By each of these rules or practices, a litigant is required to participate in a good faith effort to resolve the dispute before he is heard by a judge or jury. Yet no one has suggested that mandating attempts to settle a dispute denies access to the courts because it precludes or enjoins litigants from making appropriate use of the judicial process. Far from being an "extreme remedy" to be "used sparingly," ante at 54, 988 A.2d at 1188, our courts insist on settlement efforts in a variety of circumstances.
The majority dismisses this body of procedural law and customary practice by finding no "parallels" between "post-judgment motions for the enforcement of litigant's rights" and pre-trial motion practice and mediation. Ante at 56-57, 988 A.2d at 1189-90. The majority does not explain why post-judgment enforcement motions in the Family Part are constitutionally unique, especially since custody and parenting time motions are subject to mediation by court rule, which makes no distinction between pre-trial and post-judgment motions. R. 1:40-5(a).
The majority is justifiably concerned with delay in those emergent parenting time and custody disputes that may need the immediate attention of the court. Ante at 52-53, 988 A.2d at 1187-88. But in this appeal, we are not faced with the trial court's refusal to hear an emergent application. By virtue of their emergency, such applications require departure from usual procedural rules and conditions. On this record, we have no reason to conclude that the trial court would dismiss valid emergent applications because of deviation from its order.
Furthermore, when the trial court said parenting time and custody motions often do not raise issues requiring emergent and immediate relief, ante at 51-52, 52-53, 988 A.2d at 1187, 1187-88, it was not suggesting that they never do. It was referring to the time required for scheduling and hearing typical, non-emergent motions, and potentially faster resolution of non-emergent disputes if the parties first confer. If the majority's concern is that emergent matters not be delayed, we have the power to modify the order to exclude its application to emergent matters.[3]
Because the trial court's order does not preclude or enjoin the filing of motions, and does not otherwise deny access to the court, it does not violate appellant's due process rights.

II.
The next question is whether the order is barred by some other legal authority. Neither appellant nor the majority cites any statute, procedural rule, or decisional law that has previously prohibited such a condition on motion practice. Requiring a pre-filing four-way conference is not contrary to the court rules that control motion practice in the Family Part. See R. 1:6-2(b); 5:5-4. The majority does not state otherwise.
*1197 Without adequate authority or precedent, the majority establishes a new rule today prohibiting all trial courts from imposing a similar condition on motion practice. I believe we should refrain from pronouncing such a rule, which curtails the discretion of trial judges to manage the course of litigation in individual cases. "The right of a trial court to manage the orderly progression of cases before it has been recognized as inherent in its function." Casino Reinvest. Dev. Auth. v. Lustgarten, 332 N.J.Super. 472, 488, 753 A.2d 1190 (App.Div.), certif. denied, 165 N.J. 607, 762 A.2d 221 (2000).
In that regard, I note that this court has no general rule-making authority for procedures employed in our trial courts. The New Jersey Constitution confers upon the Supreme Court exclusive rule-making authority with respect to practice and procedure in our courts. N.J. Const., art. VI, § 2, ¶ 3; see Winberry v. Salisbury, 5 N.J. 240, 255, 74 A.2d 406, cert. denied, 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950). Our decision must be moored to legal authority, such as constitutional rights or other law.
My colleagues' dissatisfaction with the order on appeal stems from the trial court's decision not to address the merits of the ex-husband's pending enforcement motion. Hence, amid discussion of the pre-filing condition for future motions, my colleagues digress to criticizing the delay and expense caused to the litigants by the court's referral of the pending enforcement motion back to the parenting coordinator. Ante at 52-55, 988 A.2d at 1187-89. They conclude that "enforcement of the parenting time provisions of the [Final Judgment of Divorce] ... does not lend itself to deferral to a parenting coordinator." Id. at 53, 988 A.2d at 1188. Yet, by paragraph 3.4 of their Marital Settlement Agreement, the parties agreed to seek the assistance of the parenting coordinator for precisely those kinds of disputes, and our vacating paragraph 6 of the trial court's order will have no effect on deferral of future disputes to the parenting coordinator.
My colleagues also suggest that the pre-filing condition imposed on future motions caused delay in the ex-husband's enforcement motion. Id. at 55, 56-57, 988 A.2d at 1189, 1190. But that condition did not exist at the time of the trial court's ruling on the ex-husband's enforcement motion, and it has not yet been applied to any motion, as far as we can tell from the appellate record before us.
Whether the trial court correctly determined to return the pending enforcement motion to the parenting coordinator is a separate issue from whether the condition it imposed on future motions is permitted or prohibited under existing law. Disagreement with the court's deferral of the pending dispute does not affect whether the pre-filing condition of a four-way conference violates due process rights or is prohibited by other legal authority. My colleagues do not answer those questions.
The majority's holding may affect other practices of trial courts that are not addressed by the record before us. I believe case management orders in civil cases sometimes require that the parties first conduct an informal conference with the court and obtain leave of the court before they may file any motion. It seems the majority's holding would also bar such provisions of case management orders. If the prohibition announced by the majority is warranted, the appropriate rule-making body should promulgate an appropriate rule after considering its benefits and detriments.
The trial court's order may also be analyzed for compliance with "Best Practices," a term that designates efforts to bring statewide efficiency and uniformity to procedures *1198 employed in our courts. The "Best Practices" project was undertaken about ten years ago by our Supreme Court, together with its advisory conferences of presiding judges and rule-making practice committees. See Pressler, Current N.J. Court Rules, comment 4 on R. 1:1-2 (2010). A historical overview of the "Best Practices" rule-making process can be found in Pressler, N.J. Court Rules, comment 5 on R. 1:1-2 (2001).
I cannot find a "Best Practices" rule amendment that prohibits a trial judge from employing a practice that is not specifically addressed by the rules. See Amendments to the Rules Governing the Courts of the State of New Jersey, 155 N.J.L.J. 588 (Feb. 1, 1999) (family practice rule amendments); N.J. Supreme Court Amendments to the Rules of Court, 161 N.J.L.J. 449 (July 31, 2000) (civil rule amendments). The "Best Practices" amendments left intact a provision of Rule 1:1-2 that states: "[i]n the absence of rule, the court may proceed in any manner compatible with" the purposes of the rules. Those purposes are "secur[ing] a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." R. 1:1-2.
Here, the trial court was seeking to eliminate unjustifiable expense by the hasty filing of motions in a contentious matrimonial case. The procedure it required is simple, and it is fair in that it applies to both parties and is not overly burdensome. Nothing ordered by the court interferes with the parties' ability to secure a just determination by the court if they cannot resolve the dispute themselves. In sum, the court's order is compatible with the purposes of our procedural rules of court.
For civil cases, Rule 1:1-2 also requires that any procedures employed be consistent with the "Best Practices" policies recited in Appendix XX of the rules. See Pressler, Current N.J. Court Rules, Appendix XX to R. 1:1-2 (2010). I see nothing in the pre-filing condition of a four-way conference that is inconsistent with the policies stated in Appendix XX.
I am also not aware of an overarching "Best Practices" rule or policy statement that prohibits reasonable procedures and practices that are not specifically addressed by the court rules or policy statements. I believe the general directive of the "Best Practices" project is to refrain from practices and procedures that are contrary to or incompatible with the court rules or specific policy statements. If "Best Practices" implies prohibition of any practice that is not specifically authorized by the rules, we will become stagnant in the development of yet better practices and procedures. The innovative pre-trial or trial management technique of a trial judge today may be the "best practice" that an appropriate rule-making body adopts for statewide implementation tomorrow. The courtroom rather than the committee room is the better laboratory for improving court practices and procedures.
My colleagues imply that my views neglect the study and discussion that preceded adoption of the various court rules I have cited favoring attempts to settle matters before presenting them to the court for decision. Ante at 56-58, 988 A.2d at 1190. I agree that our rules of procedure should be adopted only after study and discussion, and only by the Supreme Court. That is one reason I do not agree with the prohibitory rule the majority has announced today.
I do not suggest that trial judges are free to create their own local rules for motion practice. The objective of "Best Practices" is statewide uniformity so that attorneys and litigants have fair notice of *1199 procedural rules and requirements. In decrying "the mischief created by local practices, which share unfamiliar attorneys and litigants," ante at 57, 988 A.2d at 1190, the majority attacks a straw man that is not in this case. The parties here received fair notice of the court's requirement through the court's order applicable only to future motions in this case. This record does not suggest that the trial court's order was a "local practice" employed in every case.
I see no violation of the principles behind "Best Practices" and the benefits of statewide procedural uniformity in the trial court's order. As further evidence that the policies of "Best Practices" do not bar such an individualized case management procedure, a "Best Practices" report presented to the Supreme Court by the Conference of Presiding Family Judges includes the following comment pertaining to oral argument on motions: "[t]he judge might first require lawyers to conference by themselves to resolve certain issues." Family Division Report on Best Practices and Standardization, section V, "Matrimonial Report," p. 4 (July 30, 1999).
Because no court rule or other legal authority before today prohibited the condition imposed by the trial court, and because Rule 1:1-2 permits proceeding in any manner compatible with the purposes of the rules, our review of the trial court's order should be limited to whether it is an abuse of the trial court's discretionary authority to manage a case on its docket.

III.
The majority states that the trial court abused its discretion. Ante at 52, 988 A.2d at 1187. It misapplies that standard of review because it neither finds legal error nor justifies its conclusion by demonstrating that the pre-filing condition is clearly unreasonable and prejudicial.
Our cases have described a ruling that is contrary to law as an abuse of discretion. Payton, supra, 148 N.J. at 559, 691 A.2d 321; Alves v. Rosenberg, 400 N.J.Super. 553, 562-63, 948 A.2d 701 (App.Div.2008); Rivers v. LSC P'ship, 378 N.J.Super. 68, 80, 874 A.2d 597 (App.Div.), certif. denied, 185 N.J. 296, 884 A.2d 1266 (2005); Cosme v. Borough of E. Newark Twp. Comm., 304 N.J.Super. 191, 202, 698 A.2d 1287 (App.Div.1997), certif. denied, 156 N.J. 381, 718 A.2d 1210 (1998). If the majority has concluded that the trial court's order is an abuse of discretion because it is contrary to law, it did not say what law, and I have stated my disagreement with that conclusion.
If the trial court's order is not contrary to law, our review should be limited to whether it falls outside a range of acceptable decisions. Some years ago, we explained the meaning of abuse of discretion in Smith v. Smith, 17 N.J.Super. 128, 131-33, 85 A.2d 523 (App.Div.1951), certif. denied, 9 N.J. 178, 87 A.2d 387 (1952):
From an acquaintance with the more impressive judicial utterances on the subject of abuse of discretion, it will be deduced that there are two conditions which must exist to warrant an appellate court in nullifying a ruling of the trial court made in the exercise of a conceded discretion. The first is that the judicial action must have been clearly unreasonable in the light of the accompanying and surrounding circumstances, and the second condition is that the ruling must have resulted prejudicially to the rights of the party complaining.
So, we review the trial court's exercise of discretion to determine whether it is clearly unreasonable under the circumstances, and whether it unfairly prejudices the rights of the complaining party. As an appellate court, we do not substitute our own judgment for that of the trial judge to *1200 determine how we would have addressed the matter. Viviani v. Borough of Bogota, 336 N.J.Super. 578, 592, 765 A.2d 1064 (App.Div.2001), rev'd on other grounds, 170 N.J. 452, 790 A.2d 166 (2002); Cosme, supra, 304 N.J.Super. at 202, 698 A.2d 1287.
In Cosme, supra, we explained that trial courts have at least two types of discretionary authority: (1) "dispositional result based upon facts found from the evidence," and (2) "the court's authority to manage the conduct of cases and to make rulings, even those with substantive effect, that stem from procedural considerations or reflect the manner in which the parties have litigated the case." 304 N.J.Super. at 202, 698 A.2d 1287 (citing In re Presentment of Bergen Cty. Grand Jury, 193 N.J.Super. 2, 9-12, 471 A.2d 1203 (App. Div.1984); Smith v. Smith, supra, 17 N.J.Super. at 131-33, 85 A.2d 523). In this case, the trial court exercised the second type of discretionary authority.
The abuse of discretion standard of review applies to many types of trial court rulings and decisions. See, e.g., State v. Morton, 155 N.J. 383, 453, 715 A.2d 228 (1998) (abuse of discretion standard applicable to evidentiary rulings), cert. denied, 532 U.S. 931, 121 S.Ct. 1380, 149 L.Ed.2d 306 (2001); Payton v. N.J. Tpk. Auth., supra, 148 N.J. at 559, 691 A.2d 321 (discovery rulings); State v. Winter, 96 N.J. 640, 647, 477 A.2d 323 (1984) (motion for mistrial); D.G. v. N. Plainfield Bd. of Educ., 400 N.J.Super. 1, 26, 945 A.2d 707 (App.Div.) (controlling the courtroom and court proceedings), certif. denied, 196 N.J. 346, 953 A.2d 764, cert. denied, ___ U.S. ___, 129 S.Ct. 776, 172 L.Ed.2d 756 (2008); Rinaldo v. RLR Inv., LLC, 387 N.J.Super. 387, 395, 904 A.2d 725 (App.Div.2006) (preliminary injunction).
In reviewing decisions of the Family Part, we are particularly deferential to the trial judge's knowledge and direct contact with the case and parties. See Cesare v. Cesare, 154 N.J. 394, 413, 416, 713 A.2d 390 (1998); see also Clarke v. Clarke, 349 N.J.Super. 55, 58, 793 A.2d 34 (App.Div.2002) (appellate courts grant "substantial deference" to "discretionary determinations" of family court judges, including scope of discovery for post-judgment motions); Randazzo, supra, 184 N.J. at 113, 875 A.2d 916 (pre-judgment disposition of marital assets); Eaton v. Grau, 368 N.J.Super. 215, 225, 845 A.2d 707 (App.Div.2004) (attorney's fees); La Sala v. La Sala, 335 N.J.Super. 1, 6, 760 A.2d 1122 (App.Div.2000) (distribution of marital assets), certif. denied, 167 N.J. 630, 772 A.2d 932 (2001); Cox v. Cox, 335 N.J.Super. 465, 473, 762 A.2d 1040 (App.Div.2000) (alimony). We should not be less deferential in reviewing the Family Part's procedural case management rulings than these other types of decisions.
The trial court imposed a precise, familiar, and reasonable conditionrequiring one attempt by the parties to reach resolution of the disputed issues before a judge must hear a motionand the court had a sufficient factual basis for imposing that condition. The ex-husband's motion was the fourth in just over a year pertaining to parenting time disputes since his complaint for divorce was filed in June 2007. He had also filed a domestic violence complaint that had been dismissed after a trial. The trial court was familiar with the history of litigation by the parties. It described the efforts to reach settlement as contentious, arduous, and extraordinarily difficult. The court concluded that the parties were quick to resort to judicial intervention rather than attempt to resolve their ongoing disputes. I believe the majority's implicit rejection of these findings, ante at 50-53, 988 A.2d at 1186-88, does not adhere to the standard of review mandated by Cesare, supra, 154 N.J. at 413, *1201 416, 713 A.2d 390, and the other cases I have cited.
My colleagues charge that my conclusions are "untethered from the facts" of this case. Ante at 55, 988 A.2d at 1189. If that charge is true, and the trial court abused its discretion, I would still not exercise power that we lack to impose a general prohibitory rule broadly applicable to all trial courts, without an express finding of a constitutional violation, or a specific rule or policy that prohibits the disputed condition, including "Best Practices" rules and policies.
The condition the court imposed is reasonable; it is not overly burdensome, and it does not unfairly prejudice either party. The parties are not directed actually to resolve their dispute without filing a motion. They are only required to participate in a conference and attempt to resolve their dispute before filing a motion. That condition is not like the restraints imposed in Rosenblum, supra, 333 N.J.Super. 385, 755 A.2d 1184, by which the court would not accept any complaint for filing until its content was screened. Here, the burden upon the litigants is more like other prerequisites that apply to the filing of all motions, such as a notice of motion with appropriate language, an affidavit or certification of service, page limits, and the payment of a filing fee. See R. 1:5-3, 1:6-2, 5:5-4; N.J.S.A. 22A:2-7.
The trial court's order did not deny the ex-husband access to the court, it was not barred by any legal authority before today, it is compatible with the purposes of our procedural rules of court, it did not prejudice either party, and it was reasonable under the circumstances. I see no abuse of discretion. I would reject the ex-husband's appeal from paragraph 6 of the order of November 21, 2008.
NOTES
[1] This issue is discussed in more detail infra at section B.
[2] The record is not clear on the cause of the one month delay in calendaring the motion from the filing of defendant's September 25, 2008 cross-motion, which was already one month after plaintiff filed his motion, greatly exceeding the time frames set forth in Rule 5:5-4(c).
[1] Subsection (1) of our Rule 1:6-2(c) was adopted in 1981 and modeled after the federal rule. Subsection (2) was added in 1994. Pressler, N.J Court Rules comment 2 on R. 1:6-2(c) (1995).
[2] In Gangemi v. Berry, 25 N.J. 1, 11, 134 A.2d 1 (1957), the Court said:

[G]reat caution is necessary in the use of the legal axiom expressio unius est exclusio alterius .... The maxim that the express mention of one thing implies the exclusion of another is purely interpretive in aid of intention, and not a rule of law; ... only those things expressed in such positive affirmative terms as plainly imply the negative of what is not mentioned will be considered.... The implication must be clear and compelling, a necessary consequence, not a conjectural or purely theoretical concept.
Accord Allstate Ins. Co. v. Malec, 104 N.J. 1, 8, 514 A.2d 832 (1986). The express reference in Rule 1:6-2(c) to discovery and calendar motions certainly means that the rule does not apply to other kinds of motions. It does not mean that applying a similar condition to other kinds of motions denies litigants access to the courts.
In another context, distribution of marital assets, we implicitly applied the "expressio unius" maxim in Grange v. Grange, 160 N.J.Super. 153, 158, 388 A.2d 1335 (App.Div. 1978), to limit the trial court's discretionary powers. The Supreme Court overruled Grange in Randazzo v. Randazzo, 184 N.J. 101, 113, 875 A.2d 916 (2005).
[3] The majority does not address another burden that a four-way conference could hypothetically impose on litigants, the costs and possible delay of engaging an attorney if a party is no longer represented. In this case, both parties were represented.