**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5206-14T3[1]
         A-0747-15T3

RUIRU JI,

    Plaintiff-Respondent,

v.

HANSON LO,

    Defendant-Appellant.

———————————————————————————

RUIRU JI,

    Plaintiff-Respondent,

v.

HANSON SHUEN LO,

    Defendant-Appellant.

———————————————————————————

        Submitted May 2, 2017 — Decided December 1, 2017

        Before Judges Suter and Grall.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Somerset
        County, Docket No. FM-18-0631-10.

        Hanson Shuen Lo, appellant pro se.

---

[1] These are back-to-back appeals consolidated for the purpose of
this opinion.

Ruiru Ji, respondent pro se.

The opinion of the court was delivered by

SUTER, J.A.D.

In these consolidated appeals, defendant Hanson Lo appeals portions of post-judgment matrimonial orders entered by the Family Part on May 29, 2015; June 5, 2015; July 24, 2015; and September 1, 2015. His appeal of the July 24, 2015 order was out of time and we decline to consider it.[2] We reverse and remand the June 5, 2015 order that required pre-screening of the parties' motions and is the subject of A-5206-14. We direct the court to apply the holding in Parish v. Parish, 412 N.J. Super. 39, 51 (App. Div. 2010), should there be the need for any future order to control the applications for relief made by one or both of the parties. We affirm the portions of the other orders that defendant appeals in A-0747-15.

I.

Plaintiff Rui-Ru Ji and defendant Hanson Shuen Lo were married in 1998. Following a lengthy trial, the Family Part entered a dual judgment of divorce (DJOD) on May 31, 2013.

---

[2] We also decline to consider any argument regarding paragraph 24 of the June 5, 2015 order because it was not listed on defendant's notice of appeal.

They have two daughters, Annie and May,[3] who were twelve and eight at the time of the divorce. Among other issues, the DJOD addressed custody and parenting time. The DJOD provided for the appointment of a parenting time coordinator to "resolve parenting time disputes between the parties." Among the reasons given for appointing the parenting coordinator was the need to "streamline the resolution of parenting disputes." The parties were ordered to submit all disputes to the parenting coordinator before "involving the court by motion." The parties were to include the recommendation of the parenting coordinator in their post-judgment motions.

There have been more than thirty post-judgment motions, with multiple requests for relief, and orders to show cause filed since entry of the DJOD. Because we write for parties who are familiar with the procedural and factual history of their litigation, we discuss only such portions of the orders as relate to these appeals.

Defendant appeals portions of four orders: May 29, 2015, paragraph 2; June 5, 2015 (the June 5 order) paragraphs 4, 5, 7, 21, 22 and 28; June 5, 2015 that required prior approval before a filing can be treated as a motion (the June 5 prior approval

---

[3] We have used fictitious names to preserve the children's privacy.

order); and September 1, 2015, paragraphs 1, 9, 13, 14, 20, 21 and 22.[4]  The June 5 prior approval order is appealed under A-5206-14 and addressed in section IV, infra.

## II.

### A.

Under the DJOD, defendant exercised parenting time with May during the week and overnight every other weekend.  Defendant was not to "sleep in the same bedroom . . . during his visitation sessions."  Defendant's parenting time with Annie was suspended until he and Annie "attend[ed] therapy together concerning their relationship issues."

In April 2014, defendant's overnights with May were suspended until he could provide proof to the parenting coordinator of his living arrangements.  His weekly parenting time continued.  That order is not part of this appeal.  In July 2014, defendant's request for reinstatement of his overnight parenting time with May

---

[4] We address the May 29 and June 5 orders in this appeal because the record does not permit our determination that they were untimely appealed.  Defendant filed a motion for reconsideration as to both of the orders on June 22, 2015, which motion was decided on September 1, 2015.  This tolled the time for appeal.  R. 2:4-3(e).  Defendant's notice of appeal was filed October 5, 2015, and amended October 9, 2015, within forty-five days of September 1. We can not determine from the record when the underlying orders were served.

was denied because he still had not obtained a "simple home inspection." That order also is not part of this appeal.

In 2015, plaintiff sought to amend the parties' parenting schedule to reflect recommendations by the parenting coordinator, which included visitation on Thursday, some Saturdays and Sundays, but no overnights. Defendant requested additional time with May on Sunday during the day. He did not ask for overnight visitation. He also asked that the court conduct an in camera interview with May to "gauge her opinions on how she likes to be treated and the parenting time schedule." Defendant did not ask for parenting time with Annie.

On May 29, 2015, the Family Part judge ordered parenting time for defendant consistent with the recommendation of the parenting coordinator. Defendant's overnight parenting time remained suspended because he had not submitted to an inspection of his residence as previously ordered.

Defendant subsequently renewed his request that the court conduct an in camera interview, now with both children, about a number of issues including parenting time. He did not ask for overnight parenting time with May or Annie. In the June 5, 2015 order, the court denied that request because there was "no custody determination being made . . . — there is only an on-going dispute between the parties regarding parenting time."

Defendant asked to resume overnight visitation with May once he rented a two-bedroom apartment. In the July 24, 2015 order, the court found defendant showed changed circumstances warranting a modification. Because safety issues were now satisfied, which had led to suspension of defendant's parenting time, the court ordered that defendant could resume overnight parenting time with May. However, the court found it was not in May's best interest to revert "immediately" to the DJOD parenting time schedule, and modified the parenting time schedule to include only one overnight every other weekend rather than two. Future requests for modification could be made, consistent with the DJOD, after first presenting the request to the parenting coordinator. Defendant did not request parenting time with Annie.

Defendant sought reconsideration of his overnight parenting time with May because he contended he had not been ordered to submit to a home inspection and was penalized by having not complied. On September 1, 2015, the court denied defendant's request for reconsideration.

Defendant contends on appeal that the court permanently modified his parenting time without conducting a best interest analysis, without making findings of fact or considering relevant, credible evidence and by simply accepting the recommendation of the parenting coordinator.

6

B.

Defendant requested that the court hold plaintiff in contempt because he claimed she made false statements in some of her motion papers submitted to the court. He alleged that she "falsely accused me of stealing monies from our joint bank account" had "stolen my identity" and then tried to "frame me." Defendant alleged Bank of America commenced an investigation and that the police were investigating the issue. On June 5, 2015, the court denied defendant's request for entry of a contempt order noting that defendant had involved the local police and county prosecutor and "law enforcement . . . already subpoenaed the relevant account statements."

Defendant's request for reconsideration of this issue was denied on September 1, 2015, because defendant did not provide any new information or demonstrate that the decision was palpably incorrect or irrational.

Defendant appeals the June 5 and September 1 orders, contending the court failed to make appropriate findings of fact or consider relevant, credible evidence about the merits of his underlying contentions and plaintiff's alleged misrepresentations.

C.

Annie "threatened to harm herself" in November 2012 and "resisted visiting with defendant since that time." Defendant's

parenting time with Annie was suspended under the DJOD until they could "attend therapy together concerning their relationship issues." Annie was hospitalized 2014 following a suicide attempt.

The DJOD provided that "with regard to medical choices," plaintiff had "full custody" of the children. In entering the DJOD, the court found that giving plaintiff full medical authority regarding the children was in the "best interests" of the children and that plaintiff was "better equipped to make these decisions on her own."

Defendant contended that plaintiff's "abusive" parenting style related to Annie's suicide attempt and that her neglect was putting the children at risk by ignoring her need for therapy. He wanted Annie to continue with a particular therapist who was identified in the DJOD. He requested an order to stop plaintiff from interfering with Annie's therapy, to cooperate with her therapy and for the court to appoint an expert to assess any acts or symptoms of parental alienation by plaintiff.

The court denied these requests in the June 5, 2015 order. Noting that the DJOD required Annie to attend therapy with a specific therapist "on an as needed basis as she reasonably determines," the court found defendant had not shown that therapy with this doctor was needed. In addition, defendant had not shown the suicide attempt was related to plaintiff's parenting, or that

she interfered with or was not cooperating with Annie's therapy. The court denied defendant's request to appoint an expert to assess whether there was parental alienation because he had not shown evidence of alienation. The court denied defendant's request to conduct an in camera interview with the children because there was no pending request to change custody. Defendant's request for reconsideration of these issues was denied on September 1, 2015.

On appeal, defendant contends plaintiff is not in compliance with the DJOD by not continuing therapy with the doctor identified therein. Although acknowledging that Annie had therapy with three other doctors, he contends that plaintiff did not show the court that they were superior physicians for Annie. He alleged he was not apprised of the children's welfare and broadly alleged evidence of "alienation tactics." He contends the court should determine the cause of the suicide attempt under its "parens patriae interest" and blamed plaintiff's parenting.

### III.

We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's "special jurisdiction and expertise in family matters." Cesare v. Cesare, 154 N.J. 394, 413 (1998). Thus, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc.

v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). However, "[a]lthough a family court's factual findings are entitled to considerable deference, we do not pay special deference to its interpretation of the law. [T]he trial court is in no better position than [an appellate court] when interpreting a statute or divining the meaning of the law." D.W. v. R.W., 212 N.J. 232, 245 (2012) (citations omitted).

We have no necessity to consider whether the court abdicated its authority to the parenting coordinator, as alleged by defendant, when it adopted her recommendation about parenting time in the May 29, 2015 order. Although defendant contends this was done without "conduct[ing] any sort of factual finding as to whether [modification of the parties' custody and parenting time agreement] would be in the best interests of the children," that issue is moot. The May 29 order was modified by the July 24, 2015 order. See City of Camden v. Whitman, 325 N.J. Super. 236, 243 (App. Div. 1999) (providing that "courts of this state do not resolve issues that have become moot due to the passage of time or intervening events."). The July 24 order allowed overnight parenting time with May. Although defendant contends the court abused its discretion by entering that order, defendant's overnight parenting time with May is not squarely before us because defendant did not timely appeal that order. Even if he had, we

find no abuse of discretion by the court in ordering overnight parenting time with May that was not "immediately" what it had been in the DJOD, given the suspension of overnight parenting with her for nearly fifteen months and the high conflict nature of the family.

We similarly find no abuse of discretion by the court's entry of the other orders that are appealed in A-0747-15. We agree with the court that defendant did not show plaintiff "has failed to comply with her obligations under the terms of the [DJOD] with respect to her duties as the sole legal custodian in the domain of medical and other related choices." There was no evidence that therapy was not being provided for Annie by competent physicians or that plaintiff was not cooperating in obtaining or providing those services. We agree with the court that defendant's proofs did not demonstrate the necessity for the court to appoint an expert on parental alienation. See R. 5:3-3(a) (providing that appointment of experts by the court is within the court's discretion to assist in disposition of an issue). We agree there was no necessity to interview the children in camera when the issues involved parenting time and not custody. The court did not abuse its discretion by not holding plaintiff in contempt.

Defendant asked for reconsideration of the court's orders. We agree with the court that defendant presented no new evidence

11

for the court's consideration nor did he show that the court's decision was based on incorrect reasoning. See Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div.) (citing D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990) (providing that reconsideration is "granted only under very narrow circumstances . . . in which either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.")), certif. denied, 174 N.J. 544 (2002).

After carefully reviewing the record and the applicable legal principles, we conclude that defendant's further arguments in A-0747-15 are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

IV.

The court's June 5, 2015 prior approval order precluded both plaintiff and defendant "from filing any further applications for relief without obtaining prior authorization from this [c]ourt." That order allowed the parties to submit requests for relief but they were to be "pre-approved" before "converting" them to become motions in the Family Part. The court explained in its written statement of reasons that the parties repeatedly filed motions for relief since the divorce. The multiple applications often were

"procedurally deficient" and included claims that the court already had decided. Considering this a misuse of motion practice, the court described their actions as the "repetitive filing of deficient and frivolous motions."

In A-5206-14, defendant appeals the June 5, 2015 prior approval order. He contends the court erred because there had never been a finding that the parties' motions were frivolous or filed for an abusive purpose, nor had the courts, who heard the motions, imposed sanctions.

Our review of the June 5, 2015 prior approval order and accompanying statement of reasons reveals that it was entered without application of our holding in Parish, supra, 412 N.J. Super. at 54, where we described the findings required before a court could enjoin litigants from presenting their claims. Specifically,

> In those limited instances where appropriate, an injunction should be issued only after the judge (1) makes a finding that past pleadings were frivolous or designed for an abusive purpose; (2) fully scrutinizes the newly filed pleadings and determines them to be repetitive and within the scope of the proscribed vexatious matters; and (3) has unsuccessfully attempted to abate the abuse by employing sanctions such as those provided by Rule 1:10-3 or Rule 5:3-7. Additionally, any restraint entered must be circumscribed, not global, and narrowly focus on the issues shown to warrant restraint.

13

[Parish, supra, 412 N.J. Super. at 54.]

As we said there, "[t]he business of the courts is to finalize disputes. Any discretionary exercise of the extreme remedy of enjoining or conditioning a litigant's ability to present his or her claim to the court must be used sparingly; it is not a remedy of first or even second resort." Ibid.

Here, the June 5 prior approval order applied broadly to any application made by either plaintiff or defendant; it was not narrowly focused on specific issues. The order required pre-screening before an application could be considered a motion, but it did not identify who would screen the applications or what criteria would be applied. The court did not identify other motions that previously were deemed to be frivolous. The court did not make reference to any prior sanctions. As such, we reverse the June 5, 2015 prior approval order that required pre-screening and remand the issue for consideration in light of Parish.

A-0747-15 is affirmed; A-5206-14 is reversed and remanded.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION