**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1037-17T2

K.L.,

    Plaintiff-Respondent,

v.

S.L.,

    Defendant-Appellant.

_____

Submitted August 21, 2018 — Decided August 24, 2018

Before Judges Messano and Geiger.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0475-12.

S.L., appellant pro se.

K.L., respondent pro se.

PER CURIAM

Defendant S.L. appeals from an October 3, 2017 order denying his application to: (1) vacate provisions of a domestic violence final restraining order (FRO) prohibiting him from having contact with his daughter, Sara, and five other individuals; (2) award him joint legal custody of Sara; (3) expand his parenting time with

Sara; (4) restore limited contact with plaintiff K.L. regarding parenting issues; and (5) vacate the requirement he obtain pre-approval from the court before filing any further motions in this matter.[1]  We affirm.

Plaintiff and defendant were married in 1996, had their only child, Sara, in 2005, and were divorced in Texas in 2009.[2]  While the final decree of divorce granted defendant custody of Sara, defendant agreed Sara could move to New Jersey with plaintiff and live with plaintiff and plaintiff's brother.  This move occurred eleven days after the divorce.  In 2011, plaintiff was granted sole legal and physical custody of Sara.  The order also required defendant to "cease and desist" from contacting plaintiff's employer and limited defendant's contact with plaintiff to communication regarding Sara's "health, education, and welfare."

Plaintiff filed a domestic violence complaint against defendant in 2011 pursuant to the Prevention of Domestic Violence

---

[1]  A pseudonym is used in place of the daughter's name to protect the child's privacy.  We identify the parties by initials to protect their privacy.

[2]  The divorce proceedings were described in our prior opinion, K.L. v. S.L., No A-3608-16 (App. Div. March 27, 2018) (K.L. II), in which we affirmed an order denying defendant's post-judgment motion to reduce child support, require plaintiff to reimburse work-related childcare expenses, and reduce defendant's responsibility for unreimbursed health care expenses and extracurricular activities.

Act (the Act), N.J.S.A. 2C:25-17 to -35. Defendant did not appear for the domestic violence trial. Pertinent to this appeal, plaintiff testified to the extensive history of threats and assaults directed at her by defendant and her resulting fear of defendant. Finding plaintiff to be "a very credible witness," the trial court entered an FRO against defendant, barring him from all communications with plaintiff, Sara, and five other individuals and suspended his parenting time. Defendant did not appeal the FRO. The domestic violence proceedings filed by plaintiff against defendant are described in greater detail in our prior opinion, K.L. v. S.L., No A-4569-13 (App. Div. August 26, 2015) (K.L. I).

In May 2013, defendant moved to vacate the FRO or, in the alternative, order a plenary hearing to determine whether a basis existed for continuing the FRO. The motion was denied in June 2013. The judge issued a twenty-eight-page statement of reasons explaining his decision. After reviewing the extensive evidence establishing defendant's abusive behavior, the judge stated:

> Defendant ignores that the evidence in this case was memorable and overwhelming. Rarely is the [c]ourt presented with such classic domestic violence behavior. In fact, [d]efendant's abusive behavior did not confine itself to the privacy of the parties' home where it would be the subject of a "he said/she said" credibility determination. Instead, [d]efendant exhibited his behavior in a fashion that it could be objectively reviewed in the form of emails, letters, taped

A-1037-17T2

> telephone conversations in which he berated [p]laintiff and their child as well as abusive and threatening messages to the [c]ourt and its staff.

Defendant did not appeal that ruling.

In March 2014, defendant again moved to vacate or, in the alternative, to amend the FRO to allow him to have contact with Sara and to reinstate his parenting time. On April 24, 2014, the motion judge denied defendant's motion in its entirety, concluding defendant's motion was "essentially the same application" that was "denied less than ten months before." K.L. I. (slip op. at 6). Defendant appealed. We affirmed the denial of defendant's motion, finding defendant "failed to present any significant change in circumstances that would warrant modification of the FRO." Id. at 8. We concurred with the motion judge's assessment that defendant's applications were "glaringly deficient, in light of the record that clearly established defendant's history of threatening and assaultive behavior." Id. at 10).

In December 2016, defendant moved to dismiss certain provisions of the FRO. The motion was denied without prejudice due to a procedural deficiency. Several months later, defendant again moved to dismiss the provisions of the FRO: (1) preventing him from having any contact or parenting time with Sara; (2) preventing him from any contact with plaintiff regarding parenting

issues; and (3) preventing him from having any contact with five other individuals. The motion also sought an award of joint legal custody of Sara and parenting time. On March 15, 2017, the trial court denied the motion "subject to a best interests evaluation." The statement of reasons accompanying the order required plaintiff and defendant "to engage in a best interest evaluation on behalf of [Sara]," by a psychologist mutually selected by the parties. The judge further stated:

> The best interest evaluation shall include, but is not limited to inquiries involving: (1) the psychological functioning/capacity of both parents; (2) the impact their conflicts have had on [Sara's] emotional well-being; (3) an appropriate visitation plan for [defendant] and [Sara] which takes into consideration [defendant's] Texas residence; and (4) the recommendation of therapies, including but not limited to reunification therapy sessions. . . . Upon completion of the evaluation(s), the parties (through counsel) must confer with one another and attempt to reach a mutually acceptable resolution. Assuming they are unable to do so, either party may seek relief by way of regular FM motion, complete with the best interests evaluation(s) for this [c]ourt's consideration.

The judge further ordered defendant "shall be prohibited from filing any further applications for relief without prior permission from this [c]ourt to do so. Though [defendant] is entitled to submit requests for relief, same must be pre-approved prior to converting the submission to a FM motion." This

requirement was imposed after defendant had filed six prior motions involving the "the same type of application." Additionally, the court noted defendant had filed numerous procedurally deficient motions despite being made aware of the deficiencies, forcing plaintiff to incur additional counsel fees and costs. The trial court determined it "will no longer permit [defendant] to misuse motion practice or abuse the judicial process through repetitive filing of deficient motions, to which [plaintiff] must ultimately respond and incur substantial fees." Defendant did not appeal this ruling.

In July 2017, defendant again moved to vacate the same provisions of the FRO, allow scheduled telephonic and Skype communication with Sara, allow unlimited communication by email with Sara, implement specified parenting time with Sara, permit contact with plaintiff regarding parenting issues, and vacate the FM motion filing restrictions. On October 3, 2017, the trial court denied the motion in its entirety. In an accompanying statement of reasons, the trial court provided the following basis for declining to modify the FRO. Neither plaintiff nor her family consented to dissolving the FRO. Plaintiff certified she still lives in "extreme fear" of defendant, as does Sara and her extended family. While recognizing defendant had complied with the FRO, had no problems with alcohol abuse, and had engaged in

psychological counselling, the trial court concluded defendant had acted in "bad faith" by engaging in "continuously frivolous litigation under this docket in the Family Part." Weighing the factors set forth in Carfagno v. Carfagno, 288 N.J. Super. 424, 435 (Ch. Div. 1995), the trial court determined defendant did not meet his burden and concluded the FRO must continue in full force.

The trial court declined to adopt the recommendations of the best interest evaluation submitted by defendant and denied his application for joint legal custody, expanded parenting time, and limited contact with plaintiff in light of the denial of his application to modify the FRO.

With regard to reconsideration of the FM motion filing pre-approval requirement, the trial court deemed the motion untimely under Rule 4:49-2. Substantively, the trial court agreed with the reasoning for establishing the pre-approval requirement, recognizing the "incredibly negative effect" of frivolous motions in Family Part cases. The court emphasized this was defendant's seventh motion to modify provisions in the FRO, several of which were procedurally deficient even after the trial court brought the deficiencies to defendant's attention. The trial court also noted defendant's misreading of the filing restriction. This appeal followed.

Defendant raises the following issues on appeal:

POINT I

THE COURT ERRED BY FAILING TO UNCONDITIONALLY
REMOVE FROM THE FRO ALL OTHER NAMES (BUT
[K.L.]) RAMMED IN ILLEGALLY, WITH LITTLE OR
NO FACTUAL BASIS.

POINT II

THE COURT ERRED BY FAILING TO REMOVE FROM THE
FRO MY DAUGHTER ([Sara]) RAMMED IN ILLEGALLY,
REINSTATE MY PARENTING RIGHTS STRIPPED
ILLEGALLY, AND EXPAND MY PARENTING RIGHTS PER
BEST INTERST EVALUATION.

POINT III

THE COURT ERRED BY FAILING TO REMOVE
RESTRICTIONS ON MY FUTURE FM MOTIONS ENTERED
WITH NO FACTUAL OR LEGAL BASIS.

POINT IV

THE COURT ERRED BY FAILING TO RESTRICT MY
ADVERSARY'S REPEATED ATTEMPTS FOR COUNSEL
FEES.

Our review of a Family Part's order is limited. Cesare v.
Cesare, 154 N.J. 394, 411 (1998). We do not disturb a trial
court's factual findings unless unsupported by "adequate,
substantial and credible evidence," Rova Farms Resort, Inc. v.
Investors Ins. Co. of Am., 65 N.J. 474, 483-84 (1974), and we pay
particular deference to the Family Part's expertise, Cesare, 154
N.J. at 412-13.

Relief from an FRO is governed by N.J.S.A. 2C:25-29(d), which
requires a showing of good cause. In Kanaszka v. Kunen, 313 N.J.

Super. 600, 607-08 (App. Div. 1998), we adopted the eleven non-exclusive Carfagno factors the trial court should consider when determining whether good cause has been shown:

> (1) whether the victim consented to lift the restraining order; (2) whether the victim fears the defendant; (3) the nature of the relationship between the parties today; (4) the number of times that the defendant has been convicted of contempt for violating the order; (5) whether the defendant has a continuing involvement with drug or alcohol abuse; (6) whether the defendant has been involved in other violent acts with other persons; (7) whether the defendant has engaged in counseling; (8) the age and health of the defendant; (9) whether the victim is acting in good faith when opposing the defendant's request; (10) whether another jurisdiction has entered a restraining order protecting the victim from the defendant; and (11) other factors deemed relevant by the court.
>
> [Carfagno, 288 N.J. Super. at 435.]

The trial court must explore and consider the history of the relationship and prior acts of domestic violence "to fully evaluate the reasonableness of the victim's continued fear of the perpetrator" and "the necessity for continued protection." Kanaszka, 313 N.J. Super. at 607-08 (citations omitted). However, "[t]he linchpin in any motion addressed to dismissal of a final restraining order should be whether there have been substantial changed circumstances since its entry that constitute good cause for consideration of dismissal." Id. at 609. The same analysis

9

applies to applications to modify or eliminate no contact provisions relating to additional individuals imposed by an FRO. See G.M. v. C.V., 453 N.J. Super. 1, 12-13 (App. Div. 2018); T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017); Kanaszka, 313 N.J. Super. at 608; N.J.S.A. 2C:25-29(d).

In G.M., we explained the burden imposed on the party seeking to modify or dissolve the FRO and the procedures to be employed by the trial court:

> The party asking to modify or dissolve the FRO has the "burden to make a prima facie showing [that] good cause exists for dissolution of the restraining order prior to the judge fully considering the application for dismissal." Kanaszka, 313 N.J. Super. at 608. That party must show "substantial changes in the circumstances" from what existed at the final hearing for the court to "entertain the application for dismissal" in order that the victim is not "forced to repeatedly relitigate issues with the perpetrator, as that itself can constitute a form of abusive and controlling behavior." Ibid. A plenary hearing should only be ordered where this burden is met and there are "facts in dispute material to a resolution of the motion . . . . Conclusory allegations should be disregarded." Ibid. (citing Lepis v. Lepis, 83 N.J. 139, 159 (1980)).
>
> [G.M., 453 N.J. Super. at 12-13 (alteration in original).]

Applying these principles, we are satisfied the record fully supports the Family Part's decision to deny defendant's motion in its entirety. Defendant's latest motion failed to present any

significant change in circumstances that would warrant modification of the FRO. In June 2013, the judge undertook a detailed review and carefully analyzed the Carfagno factors. In the absence of any subsequent significant change, we agree with the motion judge's conclusion that defendant presented no reason to revisit the most recent ruling entered less than ten months earlier, which thoroughly addressed all of defendant's arguments. The judge's comprehensive statement of reasons fully explored and considered the extensive history of domestic violence between the parties. See Kanaszka, 313 N.J. Super. at 607.

Defendant also argues the trial court erred by not vacating the restriction against filing any further applications for relief without obtaining prior permission from the trial court to do so. Here, the restriction does not prevent defendant from seeking relief. Instead, the restriction only requires pre-approval prior to converting the application to an FM motion. Notably, defendant does not contend he has been denied pre-approval by the trial court.

We are also mindful of the requirement that applications to dissolve or modify an FRO must be heard by "the same judge who entered the order, or has available a complete record of the hearing or hearings on which the order was based." N.J.S.A. 2C:25-29(d). The "complete record" requirement includes a complete

transcript of the FRO hearing.  Kanaszka, 313 N.J. Super. at 606.
Screening to determine if a repetitively filing defendant met the
statutory requirements may be appropriate since failure to provide
a complete record of the final FRO hearing is grounds for denial
of the motion.  See id. at 607 ("Without the benefit of the final
hearing transcript, the motion judge was unable to fully consider
[defendant's] arguments.").  Here, the filing restriction affected
only applications sought to be filed in the FM action, not the
domestic violence proceeding.

Although applied infrequently, restrictions against filing
prospective motions are appropriate in limited circumstances.  A
trial court has the power to enjoin prospective harassing
litigation.  D'Amore v. D'Amore, 186 N.J. Super. 525, 530 (App.
Div. 1982).  "However, 'that power must be exercised consistently
with the fundamental right of the public to access to the courts
in order to secure adjudication of claims on their merits.'"
Rosenblum v. Borough of Closter, 333 N.J. Super. 385, 396 (App.
Div. 2000) (quoting D'Amore, 186 N.J. Super. at 530).  Absent
finding a need to control baseless litigation, restricting access
to the court is an abuse of discretion.  Parish v. Parish, 412
N.J. Super. 39, 51 (App. Div. 2009)

Defendant relies on the Chancery Division opinion in D'Amore.
D'Amore did not involve a party who repeatedly filed frivolous

motions causing the opposing party to incur litigation costs and absorbing precious court resources. Nor did D'Amore address the power to enjoin motions where a party had filed numerous frivolous motions. In such circumstances, restricting access to the courts may be warranted. "The prehearing examination and screening of motions is particularly warranted where the history of the litigation demonstrates the use of repetitive and frivolous motions." Kozak v. Kozak, 280 N.J. Super. 272, 277 (Ch. Div. 1994).

Considering the history of repetitive, procedurally deficient, and meritless filings by defendant, we cannot conclude the trial court abused its discretion by continuing the pre-approval process. The pre-filing approval requirement is reasonable, not unduly burdensome, and does not unfairly prejudice either party. See Parish, 412 N.J. Super. at 75 (Ashrafi, J., concurring and dissenting).

The argument raised by defendant in Point IV is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1037-17T2