**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1268-20

J.J.R.[1],

    Plaintiff-Appellant,

v.

K.A.R.,

    Defendant-Respondent.

_____

Submitted October 25, 2021 – Decided November 19, 2021

Before Judges Fasciale and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FM-08-0542-19.

Kennedy & Vassallo, attorneys for appellant (Nancy Kennedy Brent, on the briefs).

Law Offices of Lynda L. Hinkle, LLC, attorneys for respondent (Jarred McCart, on the brief).

---

[1] We use initials to protect the identity of the parties and children and to preserve their confidentiality. R. 1:38-3(d)(13).

PER CURIAM

In this post-judgment custody and parenting time dispute, plaintiff J.J.R. (father) appeals from the Family Part's December 11, 2020 order denying his motion to change the residential custody status of the parties' daughter E.R., born in 2005. The judge granted defendant K.A.R.'s (mother) cross-motion to compel cooperation relative to parenting time and granted her request for counsel fees in the amount of $1,983 to be paid by plaintiff. For the reasons that follow, we affirm the decision to deny plaintiff's motion to change the residential custody status of E.R., but we reverse and remand the award of counsel fees because the judge did not address the factors required by Rules 5:3-5(c), 4:42-9, and RPC 1.5(a).

I.

The following facts are derived from the motion record. The parties divorced in April 2019, after a sixteen-year marriage. Two children were born of the marriage: Z.R., born in 1998; and E.R., a daughter born in 2005, who is the subject of the matter under review. Although not referenced in the final judgment of divorce (FJOD), the parties executed a two-page property settlement agreement (PSA) on March 16, 2019. On May 1, 2020, the parties entered a consent order, which modified the FJOD.

A-1268-20

The FJOD granted joint legal custody of the parties' two children and liberal, reasonable parenting time, as agreed to by the parties. Defendant was designated as the parent of primary residence (PPR), and plaintiff was designated as the parent of alternate residence (PAR). Plaintiff was ordered to pay child support of $132 per week directly to defendant. The PSA reiterated the terms of custody and parenting time but reduced the child support obligation to $86 per week. After the consent order was entered, E.R.'s relationship with defendant deteriorated to the point she no longer wanted to reside with defendant.

According to defendant, she attributes E.R.'s unhappiness to her stricter parenting style and "setting rules." On the other hand, plaintiff stated E.R. informed him that defendant "is very belittling to her"; "does not take her feelings into consideration"; "seems out of control of her emotions"; "is attempting to manipulate [E.R.]"; "refuses to consider rational and logical perspectives if they differ from her own thoughts"; and "is trying to cast herself as a victim."

Thereafter, E.R. began living with plaintiff. E.R.'s grades declined, which defendant blamed on plaintiff's lack of structure and discipline, while plaintiff pointed out the challenges of online learning during the COVID-19 pandemic.

 A-1268-20

The parties' ability to co-parent worsened as evidenced by defendant's allegation that plaintiff unilaterally took the then fifteen-year-old E.R. to a gynecologist to obtain a birth control prescription. Defendant was not advised of the prescription until plaintiff was on his way to a pharmacy to fill it.

Defendant also claims plaintiff took E.R. to another unspecified doctor's appointment without her prior knowledge, and he refused to communicate with her regarding E.R. Plaintiff refused to return E.R. to defendant's home. Defendant alleges this failure to communicate adversely affects her relationship with E.R., and plaintiff fails to encourage E.R. to reengage in individual and joint therapy with defendant despite E.R.'s prior consistent attendance.

On September 17, 2020, plaintiff filed a motion seeking the following relief: (1) "[a] change in the physical custody of the parties' minor [child], [E.R.], . . . with [p]laintiff being named the [PPR]"; (2) "[p]arenting time to be determined between the parties with substantial input from [E.R.]"; (3) "[a] recalculation of child support"; and (4) any other equitable remedies. Defendant filed a notice of cross-motion for post-judgment relief on November 23, 2020, requesting the judge: (1) deny plaintiff's motions; (2) enforce the PSA as it pertains to parenting time; (3) require E.R. to continue with therapy; and (4) award her counsel fees and costs.

4

Due to the COVID-19 pandemic, the hearing on the motions was scheduled to take place via Zoom on December 11, 2020. An email to the parties' attorneys was sent on December 10, 2020, containing a Zoom link and the date, time, meeting identification, and passcode for the hearing. The judge heard oral argument from both counsel, and the litigants were allowed to appear virtually.

Later that same day after the hearing, the judge issued a written fifteen-page memorandum and order. The judge denied plaintiff's motion for a change in the parental residency designation and to recalculate child support. The judge highlighted that defendant is "the primary caretaker" of E.R. and "has greater autonomy over the day-to-day decisions with the child." In his memorandum and order, the judge found:

> [p]laintiff has failed to meet his burden. The circumstances he describes simply represent the struggles of raising a teenager. As joint custodians, the parties share "the legal authority and responsibility for making 'major' decisions regarding the child's welfare," not "minor day-to-day decisions." Beck [v. Beck], 86 N.J. [480], 487 [(1981)]. Plaintiff has not followed that principle. He has not encouraged E.R. to mend her relationship with her mother, despite [d]efendant's efforts to work on the issues that divide them. And perhaps more troubling, he unilaterally decided to have E.R. stop attending therapy and start taking birth control pills. Such major decisions require consultation between both joint custodial parents.

Plaintiff suggests that parenting time for E.R. should be her decision, asking that "[p]arenting time be determined between the parties with substantial input from the parties['] minor daughter." That would not be appropriate. The parties must first get on the same page, or at least in the same book, regarding parenting of E.R. True, a child of her age should be heard. But she should not have the final say. The parents (one or both) cannot abdicate their role as parent to ensure the health, safety and welfare to the very child for which they are legally and morally responsible.

The judge ordered the parties to attend "either family therapy or mediation" pursuant to Rule 1:40-5(a)(2).[2] The judge also denied plaintiff's request to recalculate child support because no changed circumstances were established. As to defendant's cross-motion, the judge granted her request for counsel fees and ordered plaintiff to pay the sum of $1,983 on an installment

---

[2] Rule 1:40-5(a)(2) provides:

> In addition to the general requirements of Rule 1:40-4, the parties shall be required to attend a mediation orientation program and may be required to attend an initial mediation session. Mediation sessions shall be closed to the public. The mediator and the parties should consider whether it is appropriate to involve the child in the mediation process. The mediator or either party may terminate a mediation session in accordance with the provisions of Rule 1:40-4(h).

A-1268-20

basis. Plaintiff's application to stay the counsel fee award pending his appeal was denied by the judge.

## II.

On appeal, plaintiff argues the following points:

(1) the judge failed to apply the best interests of the child standard warranting reversal and remand;

(2) the judge's decision was not based on adequate, substantial, and credible evidence;

(3) counsel fees were erroneously awarded to defendant without application of the Rule 5:3-5(c) factors; and

(4) the judge erroneously proceeded without plaintiff being present.

Appellate courts reviewing a trial court's findings adhere to a well-settled standard of review. "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). Therefore, we will "not disturb the 'factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of

A-1268-20

justice.'" Cesare, 154 N.J. at 412 (first alteration in original) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

The conclusions of Family Part judges regarding child custody "are entitled to great weight and will not be lightly disturbed on appeal." DeVita v. DeVita, 145 N.J. Super. 120, 123 (App. Div. 1976) (citing Sheehan v. Sheehan, 51 N.J. Super. 276, 295 (App. Div. 1958)). Because this court recognizes "the special expertise of judges hearing matters in the Family Part," Parish, 412 N.J. Super. at 48 (citing Cesare, 154 N.J. at 412), it will only disturb the Family Part's factual findings if "they are 'so wholly insupportable as to result in a denial of justice.'" In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993) (quoting Rova Farms, 65 N.J. at 483-84). An appellate court, in consequence, will only reverse the family court's conclusions if those conclusions are so "'clearly mistaken' or 'wide of the mark'" that they result in the denial of justice. Parish, 412 N.J. Super. at 48 (internal quotations omitted) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). The Family Part's legal conclusions, however, are reviewed de novo. See N.J. Div. of Youth & Fam. Servs. v. I.S., 202 N.J. 145, 183 (2010).

Plaintiff argues the judge erred in failing to consider the best interests of E.R. in assessing whether a change of custody and parental designation was

appropriate. He also contends the judge disavowed the evidence and allowed his "personal feelings about a fifteen-year-old's sexuality and bodily choices to trump appropriate application of the law." Conversely, defendant asserts the judge properly evaluated the evidence and did not need to reach the best interests analysis because plaintiff failed to meet the threshold showing of a substantial change of circumstances sufficient to warrant a review of the current custody arrangement.

A judgment involving the custody of minor children is subject to modification at any time based on significant changed circumstances that would affect the welfare of the child. See Milne v. Goldenberg, 428 N.J. Super. 184, 203-04 (App. Div. 2012) (citing Beck, 86 N.J. at 497; M.P. v. S.P., 169 N.J. Super. 425, 431 (App. Div. 1979)). The court's primary consideration is the best interests of the child. A.J. v. R.J., 461 N.J. Super. 173, 181 (App. Div. 2019) (quoting Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007)); Kinsella v. Kinsella, 150 N.J. 276, 317 (1997). The court must focus on the child's "safety, happiness, physical, mental[,] and moral welfare." Fantony v. Fantony, 21 N.J. 525, 536 (1956). As part of the analysis, the judge must consider the following factors:

> the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents'

willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.  A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child.

[N.J.S.A. 9:2-4(c).]

A party seeking a change in custody bears the burden of making a prima facie showing of a change in circumstances that affects the welfare of the child. See Sheehan, 51 N.J. Super. at 287; Faucett v. Vasquez, 411 N.J. Super. 108, 119 (App. Div. 2009) (quoting Hand, 391 N.J. Super. at 105) (citations omitted). A plenary hearing is required only where "there is a genuine and substantial factual dispute regarding the welfare of the children, and the trial judge determines that a plenary hearing is necessary to resolve the factual dispute." Hand, 391 N.J. Super. at 105.

Contrary to plaintiff's contention, the judge did not make an erroneous custody and parenting time determination. The judge aptly stated that plaintiff's argument only sought "a change in residential designation" and not a change in custody. Applying N.J.S.A. 9:2-4 and the controlling case law, the judge concluded it would be in the best interests of E.R. to have defendant continue as "the primary caretaker." The judge highlighted the "suggestion that one party is disparaging or blaming the other parent through the child and weaponizing the child in the parents['] unsettled disputes. . . . is unacceptable." In addition, the judge noted "[i]t is detrimental to a child's emotional welfare."

Moreover, the judge informed the parties that if such conduct continued, he "may have no choice but to consider what is in the best interests of the child." The judge was correct in his analysis, which was based upon substantial credible evidence in the record. And, the judge pointed out that defendant "has greater autonomy over the day-to-day decisions with the child" citing Pascale v. Pascale, 140 N.J. 583, 600 (1995). The record supports the judge's findings and conclusions, and he did not reach an erroneous finding on custody and parenting time of E.R. We also conclude there was no reason for the judge to conduct an interview of E.R.

III.

In Family Part matters, <u>Rule</u> 5:3-5(c), <u>Rule</u> 4:42-9(a), N.J.S.A. 2A:34-23, and interpretative case law "clearly outline necessary considerations when imposing a counsel fee award." <u>Ricci v. Ricci</u>, 448 N.J. Super. 546, 580 (App. Div. 2017) (citing <u>Mani v. Mani</u>, 183 N.J. 70, 94-95 (2005)). Any party in a family action is permitted to recover attorney's fees so long as the party requesting the fees supports its application with "an affidavit of services addressing the factors enumerated by RPC 1.5(a) . . . . [and] a recitation of other factors pertinent in the evaluation of the services rendered . . . ." <u>R.</u> 4:42-9(b). Moreover, <u>Rule</u> 1:10-3 provides that a judge may award counsel fees on a motion to enforce litigant's rights to the party accorded relief on the motion.

In exercising its discretion, the trial court must abide by N.J.S.A. 2A:34-23, requiring consideration of "the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party." <u>Mani</u>, 183 N.J. at 93-94 (quoting N.J.S.A. 2A:34-23). <u>Rule</u> 5:3-5(c), in turn, requires the trial court to consider the following factors:

> In determining the amount of the fee award, the court should consider, in addition to the information required to be submitted pursuant to <u>R[ule]</u> 4:42-9, the following factors: (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the

12

reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

[Id. (quoting R. 5:3-5(c)).]

Therefore, when considering a counsel fee application, the motion court

must consider whether the party requesting the fees is in financial need; whether the party against whom the fees are sought has the ability to pay; the good or bad faith of either party in pursuing or defending the action; the nature and extent of the services rendered; and the reasonableness of the fees.

[Id. at 94-95 (citations omitted) (emphasis omitted).]

Fee awards should be disturbed "only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). A trial court's failure to consider the appropriate factors, make the required findings, and state its conclusions of law, constitutes a clear abuse of discretion. See Saffos v. Avaya Inc., 419 N.J. Super. 244, 271 (App. Div. 2011). Ordinarily, the purpose of a counsel fee award in a matrimonial action is to equalize the relative financial resources of the parties. J.E.V. v. K.V., 426 N.J.

13

Super. 475, 493 (App. Div. 2012) (citing <u>Kelly v. Kelly</u>, 262 N.J. Super. 303, 307 (Ch. Div. 1992)).

"Simple omnibus references to the rules without sufficient findings to justify a counsel fee award makes meaningful review of such an award impossible . . . ." <u>Loro v. Colliano</u>, 354 N.J. Super. 212, 228 (App. Div. 2002). If the court performs its obligation under the statute and rules, and "there is satisfactory evidentiary support for the trial court's findings, 'its task is complete and [a reviewing court] should not disturb the result, even though it . . . might have reached a different conclusion were it the trial tribunal.'" <u>Reese v. Weis</u>, 430 N.J. Super. 552, 568 (App. Div. 2013) (quoting <u>Beck</u>, 86 N.J. at 496). Conversely, a remand is appropriate if the trial court fails to adequately explain an award or denial of counsel fees. <u>See Giarusso v. Giarusso</u>, 455 N.J. Super. 42, 54 (App. Div. 2018) (citing <u>Loro</u>, 354 N.J. Super. at 227-28).

Here, the judge awarded counsel fees without considering all relevant factors. In its written statement of reasons, the judge simply found:

> [d]efendant seeks reimbursement for her legal fees and costs. Defense counsel filed the required certification of services which notes [d]efendant's cost to defendant against [p]laintiff['s] motion [is] $1,983. While the court cannot find that [p]laintiff's motion was made in bad faith, the position he espouses is in bad faith since it is in direct contravention to the PSA and the FJOD. Further, [p]laintiff is depriving [d]efendant of her

14

parental rights by making unilateral decision[s] on major issues regarding E.R. What is more, [d]efendant's response and her cross-prayers for relief are essentially a motion to enforce her rights under the FJOD and the PSA. As such, she is entitled to financial relief. The court has considered the factors of R. 5:3-5(c). Her motion for counsel fees will be granted.

Turning to the Rule 5:3-5(c) factors, the judge failed to consider the parties' financial circumstances, their respective ability to pay their own fees, and the amount of fees already incurred and paid. See R. 5:3-5(c)(1), (2), (4), (6); see also Barr v. Barr, 418 N.J. Super. 18, 47 (App. Div. 2011) (reversing a trial court's grant of counsel fees, in part because the court "failed to analyze the parties' relative incomes or plaintiff's ability to pay her own counsel fees.").

In arriving at the counsel fee award of $1,983, the judge provided no basis as to how he calculated the amount. The judge was required to "determine the 'lodestar,' which equals the number of hours reasonably expended multiplied by a reasonable hourly rate." J.E.V., 426 N.J. Super. at 493-94 (quoting Yueh v. Yueh, 329 N.J. Super. 447, 464 (App. Div. 2000)). Defendant's counsel provided a certification in support of the application for counsel fees and costs and a description of professional services provided. In opposition to defendant's request for counsel fees and costs, plaintiff certified he "tried numerous times

in good faith to resolve the issues" and therefore, counsel fees would be "inappropriate in this matter."

The record also reflects that the judge also imputed bad faith to plaintiff for contravening the terms of the PSA and FJOD. "[B]ad faith for counsel fees purposes relates only to the conduct of the litigation." Mani, 183 N.J. at 95 (citations omitted). "An award of attorney's fees to the adverse party is appropriate if the court finds the proceedings to have been frivolous and instituted for the purpose of harassment as well as abuse of the judicial system." Pressler & Verniero, Current N.J. Court Rules, cmt. 4.3.3 on R. 5:3-5 (2022).

By referring to the "reasonableness" and the "good faith" of the positions a party has advanced, the rule indicates two discrete, but related concepts. Advancing a losing argument, even if "ill-founded and perhaps misguided," does not, by itself, prove bad faith. Tagayun v. AmeriChoice of N.J., Inc., 446 N.J. Super. 570, 580 (App. Div. 2016) (quoting Belfer v. Merling, 322 N.J. Super. 124, 144-45 (App. Div. 1999)). "Examples of bad faith include misusing or abusing process . . . intentionally misrepresenting facts or law, or otherwise engaging in vexatious acts for oppressive reasons." Slutsky v. Slutsky, 451 N.J. Super. 332, 367 (App. Div. 2017) (citing Borzillo v. Borzillo, 259 N.J. Super.

16

286, 293-94 (Ch. Div. 1992)).[3] The judge's finding that plaintiff acted in bad faith is devoid of factual findings. The parties also did not provide sufficient information regarding their financial circumstances to address the relevant factors under Rule 5:3-5(c). We therefore reverse the judge's award of fees to defendant and remand for a formal, detailed analysis by the court. What occurred here contravened not only Rule 5:3-5(c), but Rule 4:42-9 and RPC 1.5(a) as well.

IV.

Finally, plaintiff's counsel contends he did not receive an email from the court containing either Zoom log-in information or the time scheduled for the hearing on December 11, 2020. Eventually, counsel for plaintiff logged into the hearing but plaintiff himself could not, and oral argument proceeded without him being present on the Zoom call. Plaintiff asserts the judge was unable to properly assess his credibility to his detriment.

---

[3] Although the Slutsky court also equated "bad faith" with "seeking relief not supported by fact or law," 451 N.J. Super. at 367, we assume, by its citation to Borzillo, it meant to say, "[t]o seek relief which one knows or should know that no reasonable argument could be advanced in fact or law in support thereof." Borzillo, 259 N.J. Super. at 293. As the Slutsky court observed, honestly presenting an "ill-founded" argument does not constitute bad faith.

Plaintiff's argument is unpersuasive, particularly in light of the unique challenges courts have had to overcome during the global pandemic.  Since early 2020,

> New Jersey [c]ourts have operated primarily remotely via platforms like Zoom, Microsoft Teams, and telephone conferences, with the goal of preserving the quality of justice our courts have traditionally striven to provide when court was conducted in-person.  Trial courts and staff have undertaken a herculean effort in rising to this unprecedented challenge.
>
> [D.M.R. v. M.K.G., 467 N.J. Super. 308, 313 (App. Div. 2021).]

Counsel, too, have undoubtedly had to respond to the many challenges generated by the pandemic in their efforts to represent their clients.  However, we discern no error by the court.

The record shows that on December 10, 2020, an email was sent to counsel for both parties, which contained a link and login information for the hearing scheduled to take place the following day.  Plaintiff's counsel's email address was correctly listed in the "To" portion of the email.[4]  That same email listed the start time for the hearing.  Counsel states she "sent emails and . . . placed phone calls, attempting to alert the [c]ourt that she had not received the log-in

---

[4]  The email address that appears in the "To" line of the email matches the email address used by counsel on the cover page of her brief.

information or time of [c]ourt in the instant matter," but has not provided any record of those efforts. Moreover, plaintiff's counsel did not advise the judge the fact that plaintiff was not logged in and present at the hearing. There was no manifest wrong or prejudice warranting reversal and no deprivation of due process.

To the extent that we have not specifically addressed any of plaintiff's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed, vacated, and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1268-20