**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3072-22

IN THE MATTER OF
N.C.S., a minor.[1]

_____

Argued March 19, 2024 – Decided April 30, 2024

Before Judges Paganelli and Whipple.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket Nos. FD-19-0040-21 and FD-19-0141-21.

Matheu D. Nunn argued the cause for appellant S.B. (Einhorn, Barbarito, Frost & Botwinick, PC, and Donahue, Hagan, Klein & Weisberg, LLC, attorneys; Matheu D. Nunn, Jessie M. Mills, and Alyssa Engleberg, on the briefs).

Ryan Patrick Campi argued the cause for respondent N.C.S., Jr. (Graziano & Campi, LLC, attorneys; Ryan Patrick Campi and Kathleen McCormick Campi, of counsel and on the brief).

PER CURIAM

---

[1] Pursuant to Rule 1:38-3(d), we use initials to protect the confidentiality of the participants and the minor involved in these proceedings.

S.B. (Sue) appeals from a trial court order dated May 1, 2023, denying her motion to change her child's name to include a hyphen and her surname after N.C.S., Jr.'s (Nick) last name. We affirm.

We glean the pertinent facts and procedural history from the motion record. Sue and Nick met in 2009 and began dating in 2010. The parties "cohabitated" for several years, separated, and reunited in 2017. The parties discussed marriage, having a family, and "decided to undergo fertility treatments." Sue learned she was pregnant in January 2019.

The parties discussed names for the child, Nick wanted to name the child after his grandfather if the child was male. Also, the parties continued to discuss marriage. The child, a son, was born in September 2019. While still in the hospital, Sue and Nick agreed to the child's current name. Sue provided the information regarding the child's last name for the birth certificate.

The child, Sue, and Nick resided together. Sue and Nick continued to contemplate marriage. However, in December 2019, Nick decided he no longer wanted to marry Sue. Nick did not inform Sue of this decision. In March 2020, Sue asked Nick to move out of their residence—he complied, and the child remained with Sue.

A-3072-22

In May 2021, Sue filed a verified complaint to change the child's last name. The complaint sought to switch the child's first and middle names and, as to the child's last name, include a hyphen with Sue's surname.[2]

The court conducted a plenary hearing over three days. Sue testified, as well as her mother and her brother. Nick testified on his own behalf, as well as father, the child's grandfather. The judge found the witnesses to be credible, but found the child's grandfather's testimony "to be the most relevant and persuasive." The grandfather claimed to be the paternal side's oldest family member and the family historian, and testified regarding several generations using the same first and surname. The grandfather explained he felt a connection with the prior generations, and he wanted "his grandson to feel that same connection."

The judge noted Sue "conceded" that she and Nick agreed on the child's name. The judge made findings of fact and analyzed the facts, in detail, under the applicable "best-interest-of-the-child" factors.[3]

Ultimately, the judge concluded:

---

[2] Sue does not appeal the part of the order that addressed switching the child's first and middle names.

[3] See Emma v. Evans, 215 N.J. 197, 222-23 (2013).

A-3072-22

> The decision to change a child's name is a major decision. The court places a significant amount of weight on the fact that both parties participated and ultimately selected the child's name at the time of the child's birth . . . . The court has not been provided with a good and sufficient reason for changing the child's name. There were other names that were considered and rejected by both [Sue] and [Nick]. Both parties contemplated including [Sue's] and rejected it in favor of only [Nick's].
>
> In conclusion, based upon the evidence and testimony provided by the parties and the witnesses, when considering the name change factors, this court finds that it is in the child's best interest to maintain the name
> . . . .

Sue contends the judge erred in finding an "unequivocal," not "conditional" agreement to name the child. In addition, since the condition—marriage and Sue taking Nick's surname—was not satisfied, "the court should have imposed a presumption in favor [of] the surname chosen by [Sue] the custodial parent." Moreover, compounding these errors, Sue argues the judge's analysis was flawed because it "was impermissibly slanted toward [Nick's] paternal heritage."

Our review of a trial judge's fact-finding function is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). A judge's fact-finding is "binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)).

4

"Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court fact[-]finding." Id. at 413. "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). This is so because the judge has the opportunity to see and hear the witnesses as they testify, thereby developing a "'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 396 (2009) (quoting N.J. Div of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

We will not interfere with "'the factual findings and legal conclusions of the trial [court] unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice' or when we determine the court has palpably abused its discretion." Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (quoting Cesare, 154 N.J. at 412). We will reverse the Family Part's decision "[o]nly when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' . . . to ensure that there is not a denial of justice." E.P., 196 N.J. at 104 (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007)).

A-3072-22

A judge's purely legal decisions, however, are subject to our plenary review. Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

For our purposes, name change disputes between parents fall into two categories: when the parents have not agreed to a child's name at birth and when they have so agreed. In the first category, "the surname selected by the custodial parent—the parent primarily charged with making custodial decisions in the child's best interest—shall be presumed to be consistent with that child's best interests, a presumption rebuttable by evidence that a different surname would better serve those interests." Gubernat v. Deremer, 140 N.J. 120, 123 (1995). The presumption is "strong . . . in favor of the surname chosen by the custodial parent." Id. at 144. "The non-custodial parent bears the burden of demonstrating by a preponderance of the evidence that despite the presumption favoring the custodial parent's choice of name, the chosen surname is not in the best interests of the child." Id. at 145. "[I]n resolving disputes over surnames we apply the best-interests-of-the-child standard free of gender-based notions of parental rights." Id. at 141.

In the second category, "in renaming disputes between parents who agreed on a surname at birth but find themselves later in a dispute over whether to alter the surname, the proper standard to apply is the best interests of the child." Emma, 215 N.J. at 221. "[T]he parent seeking the name change in a subsequent dispute must bear the burden of showing by a preponderance of the evidence that the name change is in the child's best interest." Id. at 222.

"Applying the best-interests-of-the-child test in the context of a dispute over whether to change a child's name requires a fact-sensitive analysis." Ibid. Although non-exhaustive, the New Jersey Supreme Court provided eleven factors to be "considered as part of the gender-neutral and child-centered totality-of-the-circumstances analysis of the child's interest in retaining or having altered his or her given surname." Id. at 223.

Governed by these principles, we discern no reason to question the judge's findings. The judge found the parties reached agreement on the child's name. This finding is supported by Sue's testimony that she "conceded" to the child's name, and her providing the child's name for the birth certificate. Moreover, our review of the record reveals Sue's trial argument was founded on the Emma factors, not Gubernat, which reflects Sue's recognition that the parties agreed to the child's name. Sue's contention the judge "arrived at [a] naked conclusion"

or "blindly concluded the parties unequivocally agreed to the name" is belied by the record.

Further, after finding the parties reached agreement on the child's name, the judge applied the analysis required by Emma. The judge explained "the parent seeking the name change in a subsequent dispute must bear the burden of showing by a preponderance of the evidence that the name change is in the child's best interest." See Emma, 215 N.J. at 222.

In analyzing the factors, the judge concluded certain factors did not weigh in favor for or against changing the child's name. She found: (i) the child identified with both sides of the family; (ii) since the child was only three years of age, his preference would not be considered; (iii) there was no parental misconduct or neglect; (iv) both families' names had a degree of community respect; (v) Sue was not improperly motivated in bringing the action; (vi) Sue had no intention of changing her surname; and (vii) there were no sibling considerations.[4]

In addition, the judge found since "the child ha[d] not utilized the name for a significant period of time and would not remember a time when his name

---

[4] Emma factors two, four, six, seven, eight and nine. 215 N.J. at 222-23.

was different if the court were to permit the name change," that factor would weigh in favor of granting the name change.[5]

Moreover, the judge found: (i) "the child would not have any potential anxiety, embarrassment or discomfort in having a different surname from" Sue. Indeed, the judge noted the parties agreed to the child having a different surname from Sue at his birth; (ii) while both parties "testified that their respective surnames ha[d] important ties to family heritage and ethnic identity"—there were five generations with the same first and surname as the child; and (iii) "the name change would negatively [a]ffect the relationship between [Nick] and the child" because "[c]hanging the child's name would sever th[e] connection" between the child and the five generations. By contrast, keeping the agreed upon name "would not [a]ffect the relationship the child ha[d] with" Sue or Nick.[6]

Therefore, the judge imposed the proper burden of proof for a name change and conducted the required "fact-sensitive analysis" by rendering detailed factual findings and carefully applying those facts to each of the Emma factors.

---

[5] Emma factor one. Ibid.

[6] Emma factors three, ten, and eleven.

A-3072-22

Sue contends the judge's <u>Emma</u> review "was impermissibly slanted toward [Nick's] paternal heritage." She asserts the judge erred by "fail[ing] to elaborate upon [Sue]'s testimony and the proofs that were admitted into evidence." Sue argues the judge's "focus in favor of the father's lineage was impermissible and directly contrary to the directive set forth in <u>Gubernat</u>."

However, there is nothing in the judge's analysis that reveals favoritism to the father's lineage. Indeed, Sue acknowledges the judge considered both surnames and "the important ties to family heritage and ethnic identity." Unquestionably, we are to "resolv[e] disputes over surnames . . . [by] apply[ing] the best-interests-of-the-child standard free of gender-based notions of parental rights." <u>Gubernat</u>, 140 N.J. at 141. This analysis guarantees a neutral approach, it does not foretell a result. Here, the judge undertook the appropriate neutral analysis and we have no reason to question her conclusion.

To the extent we have not addressed any of Sue's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3072-22